OPINION
Plaintiff-appellant the State of Ohio appeals from an order suppressing evidence. The State contends that the trial court erred by holding that the evidence was obtained as the result of an unlawful search and seizure. We agree. Although the initial stop may have been unlawful, the defendant's act of shoving the police officer and running away gave rise to a proper ground for stopping him, and the evidence was seized as the result of the subsequent stop.
Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I
Dayton police officers Susan Benge and Joseph Oldham were assigned to the Metropolitan Housing Task Force, which patrols Parkside Homes and the DeSoto — Bass Housing projects. In December, 1998, Benge learned, through an informant, that some time between Christmas and New Year's Day she and her partner would be lured to a location within DeSoto-Bass or Parkside Homes on a false call, where they would be shot in ambush. The existence of an ambush plan was corroborated by other sources.
In the early evening of December 23, 1998, Benge and Oldham were patrolling Parkside homes in a marked cruiser and in uniform, when their attention was drawn to two men on foot on Helena Street, one of whom was carrying an open container of beer. Defendant-appellant James Richardson was the companion of the man carrying the open container of beer. Richardson was not observed to be violating any laws, nor did the officers have any specific reason to be suspicious of Richardson. However, Richardson's companion was so conspicuously violating the open container law that Benge was concerned that this might be the lure for the ambush.
Oldham stopped the man with the beer, and began to frisk him. Richardson remained at the scene, and Benge told Richardson that she was going to pat him down for her safety. What happened thereafter was described by Benge as follows:
 Q. Now, since he stopped, you said, now what exactly did you say to Mr. Richardson?
 A. I told him that I was going to pat him down just for our safety just to make sure he didn't have any weapons.
Q. What did you do next?
 A. Started to pat him down and when I started to pat him down, he took both of his hands and pushed me backwards.
THE COURT: Okay. One second. All right. Thank you.
Q. When he pushed you backwards, what did you do?
 A. I stumbled backwards and tried to grab ahold of his coat and tried to get my balance before I fell off the curb.
Q. What happened next?
 A. I was able to get ahold coat. He just kept running and due to the fact that he probably outweighs me by 150 pounds he broke loose and I hollered for Joe.
Q. Then what happened next?
 A. Joe started chasing him on foot and then I jumped into the cruiser.
Q. And what happened next?
 A. I drove around. Joe was given [sic] directions as to which way Mr. Richardson was running over —
Q. What do you mean "over"?
A. Over the radio.
Q. Over the radio, okay.
 A. And I was able to come around to the driveway on Mansfield and I saw him coming and I was able to cut him off at which time I jumped out the car and I told him to just stop and then he went around the cruiser and that's when he threw down a baggy [sic] of crack next to the trash receptacle and then he tried to get inside someone's apartment at 305 Mansfield but Oldham was able to get ahold of him before he got in the door.
Q. Did you see him throw this item down?
A. Yes, I did.
Q. And what did you observe being thrown down?
 A. That it appeared to be a very large rock of crack cocaine that hadn't been cut yet.
Richardson was arrested and charged with Possession of Crack Cocaine. He moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, the trial court sustained his motion, and suppressed the evidence. From the suppression order, the State appeals.
 II
The State's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE THAT APPELLEE DISCARDED WHILE BEING PURSUED BY POLICE OFFICERS.
In its decision suppressing the evidence, the trial court held that Benge's telling Richardson she was going to frisk him constituted a stop and frisk, and that there was an insufficient basis for stopping Richardson because there was no reasonable particularized suspicion concerning him. We are inclined to agree.
The trial court then concluded that the evidence seized, the baggie of crack cocaine, was the fruit of this unlawful stop, even though it was discarded by Richardson just prior to his being seized by Oldham.
The trial court discounted the State's argument that even though the initial stop may have been invalid, Richardson's shoving of Benge afforded the police a new, and proper, basis for an investigative stop. The trial court reasoned as follows:
 Finally, this Court rejects [the] State's argument that [the] stop of Richardson can be justified on the basis that "as the defendant struck the officer a new investigation occurred, the investigation of an assault on a police officer." Memorandum in Opposition of Defendant's Motion to Suppress at 5.
 Richardson was not arrested for, nor charged with, assault on a police officer, and this Court is not persuaded that the officers pursued Richardson for the purpose of an investigation of an assault on a police officer. Thus, this is not a basis upon which Richardson's stop can be justified.
 In the past, we might have been inclined to agree with the trial court's reasoning. However, we cannot reconcile it with the holdings of Whren v. United States (1986), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89; and Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 665 N.E.2d 1091. As we understand the holdings in those cases, a police officer's actual motivation for making an investigative stop is of no consequence, as long as a reasonable police officer would have been justified, under the circumstances, in making an investigative stop. In other words, it is no longer of consequence that a stop is pretextual, as long as the pretextual reason for making the stop is lawful.
In the case before us, Richardson's act of shoving Benge gave rise to a reasonable, articulable suspicion, on her partner's part, that Richardson had committed the offense of Assault. It matters not that Benge's initial stop and frisk order may have been unlawful; the principle that one is not permitted to use force to resist an unlawful arrest has been extended to prohibit using force to avoid an unlawful detention. State v. Haines
(February 24, 1995) Lucas App. No. L-94-023, unreported. See, also, State v. Penbaur (1984), 9 Ohio St.3d 136, 459 N.E.2d 217, and State v. Barnes (December 5, 1997), Montgomery App. No. 16434, unreported.
The proper forum in which to challenge the propriety of a police officer's stop and frisk order, under the Fourth Amendment to the United States Constitution, is in a court of law, not by forcible resistance in the field. Given the understandable concern that police officers have for their safety, forcible resistance to a police officer's stop and frisk order, even if that stop and frisk order does not meet Fourth Amendment standards, creates a situation that is potentially hazardous for both the police officer and the citizen. Accordingly, we approve and follow the holding in State v. Haines, supra, that one is not permitted to use force to avoid an unlawful detention. Once Richardson used force to resist Benge's stop and frisk order, he became the legitimate subject of an investigation for Assault. Oldham, Benge's partner, who gave chase and ultimately stopped Richardson, had witnessed the altercation between Richardson and Benge, and may reasonably have suspected that his partner had been assaulted. He was not required, under the exigent circumstances, with Richardson running away, first to determine with certainty whether the shove he witnessed had physically harmed Benge, or had been an attempt to cause her physical harm. At that point, Oldham could lawfully stop Richardson, and it is immaterial that Oldham may, as the trial court found, have had other motives for doing so.
Consequently, we disagree with the trial court's conclusion that the evidence was obtained as the result of an unlawful stop. In our view, it was obtained as the result of the subsequent, lawful effort to stop Richardson, after he had shoved Benge in resistance to her stop and frisk order.
The State's sole Assignment of Error is sustained.
 III
The State's sole Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
BROGAN and KERNS, JJ., concur.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Carley J. Ingram
Anthony R. Cicero
Hon. Dennis Langer