OPINION
Plaintiff-Appellant State of Ohio appeals from an order suppressing evidence in a prosecution for Driving Under the Influence. The State contends that the trial court improperly based its decision upon the minimal nature of certain lane violations forming the basis for the traffic stop. From our review of the record, we conclude that there is evidence in the record to support the trial court's conclusion that the lane violations were "de minimis." Accordingly, although the violations were sufficient to justify a stop for the purpose of issuing a citation, the police officer lacked sufficient cause, even upon detecting a slight odor of an alcoholic beverage, to extend the scope and duration of the detention for the purpose of imposing field sobriety tests. Accordingly, the trial court properly suppressed evidence of the horizontal gaze nystagmus test performed on defendant-appellee David Spillers and the subsequently-performed breath alcohol test. The judgment of the trial court is Affirmed.
 I
About 2:00 in the morning, one day in September, 1999, Ohio State Highway Patrol Officer Bryan Foltz saw a vehicle being driven by defendant-appellee David Spillers. Foltz described his observation as follows:
 Q. Okay. And why don't you tell the Court what you observed at that date and time at that location.
 A. I was traveling westbound on 47. Observed the defendant's vehicle traveling eastbound. When I looked in my rearview mirror, I observed that he was close to the white line. His right tires were close to the white line. I turned around and followed the defendant for roughly a mile and observed him cross the white line three times and go over and drive on the yellow line.
 Q. When you say "drive on the yellow line," he did not cross the yellow line?
A. No, sir.
Q. So he was weaving within his lane of traffic?
A. Yes, sir.
Q. You say you observed this for approximately a mile?
A. Right.
Q. How far behind him were you?
A. Four to five car lengths.
Q. Okay. So what did you do?
 A. I then continued to follow him, and he turned into a driveway or his residence at the airport and stopped him. [sic]. I activated my lights, and he jumped out of his car and yelled something to the effect "I am at home. You can't do nothing" to where I then approached him. Smelled a odor of alcohol. Asked him how much he had to drink.
Q. What was his response?
A. A couple of beers.
Q. Okay. So what happened then?
 A. I then asked him to ride — or do some sobriety tests, and which he could only perform the HGN test.
Based upon Spillers's performance on the HGN test, and his refusal, or inability, to perform other field sobriety tests, Foltz arrested Spillers and took him to the Versailles Police Department, where a breath alcohol test was performed.
On cross-examination, Foltz characterized the odor of alcohol, which he believed to be that of beer, to be "slight." Furthermore, he did not testify concerning any other indicia of impairment, such as slurred speech or bloodshot eyes. Also on cross-examination, Foltz acknowledged that after the lane violations that he initially observed, he continued to follow Spillers over several roads, over a route that included several stop signs, one railroad crossing, and at least one turn, and saw neither any further traffic violations nor anything remarkable about Spillers' driving.
Based on the results of the breath alcohol test, Spillers was charged with Driving Under the Influence, Failure To Wear A Seat Belt, and "Marked Lanes." Spillers moved to suppress the evidence, contending among other things, that it was obtained as the result of an unlawful "stop and seizure." Foltz and Spillers both testified at the suppression hearing. Spillers contradicted Foltz's testimony, contending that he did not cross any lines. Spillers also contradicted Foltz's testimony concerning what Spillers said to Foltz upon being stopped at his home. In fact, Spillers testified that Foltz, after giving an account to other officers indicating that Spillers had manifested a desire to cause trouble, acknowledged to Spillers that he had lied to the other officers.
Following the suppression hearing, the trial court granted the motion to suppress. Its decision is journalized in an entry, the entire text of which is as follows:
 The matter before the Court is Defendant's Motion to Suppress based upon lack of probable cause to detain and question Defendant.
 Based upon the scant testimony presented by the State and particularly based upon the failure of the State to quantify, in either terms of distance or time, the alleged lane violations of the Defendant, based upon the principles presented in State vs. Drogi, 96 O.App. 3d 466 (Belmont), this Court finds the alleged lane violations to be de minimis. Therefore, Defendant's Motion is granted and all test results are ordered suppressed.
From this suppression order, the State appeals.
 II
The State's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN RELYING ON PRECEDENT WHICH HAS BEEN OVERRULED AND BY IGNORING TESTIMONY BY THE ARRESTING OFFICER THAT THIS STOP WAS BASED UPON HIS REASONABLE BELIEF THAT A TRAFFIC VIOLATION HAD OCCURRED NO MATTER HOW MINOR THE VIOLATION.
The State contends, and we agree, that State v. Drogi, supra,
upon which the trial court relied, is of limited precedential value in view of the subsequently-decided Whren v. United States
(1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, and Daytonv. Erickson (1996), 76 Ohio St.3d, 665 N.E.2d 1091. As we understand the holdings in both of those cases, a police officer in a marked cruiser may stop a vehicle for any traffic violation no matter how slight, for the purpose of issuing a citation for the violation. See, State v. Stephens (May 22, 1998), Mont. App. 16727, unreported. However, any intrusion upon a person's liberty must be limited to the legitimate purposes requiring it. See,State v. Chatton (1994), 11 Ohio St.3d 59.
Although, in the case before us, Spillers contends that the alleged lane violations never occurred, the trial court appears to have found that they did occur, but that they were "de minimis." Consequently, we conclude that Foltz properly stopped Spillers for the purpose of issuing a citation for the lane violations. However, that would not necessarily give Foltz the right to subject Spillers to the further intrusion represented by the administration of field sobriety tests.
 In determining whether police intrusion upon a citizen's protected liberty interests is reasonable, both the extent of the intrusion and the basis for suspicion must be considered. In other words, the greater the intrusion, the greater the basis for suspicion must be. City of Xenia v. Beatty (April 13, 1994), Greene App. No. 93-CA-28, unreported, citing Terry [v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868].
 Thus, an analysis of an investigatory stop leading to an arrest requires careful attention to each stage of the detention in order to make sure that the extent of the intrusion represented by each stage is warranted by the officer's reasonable and articulable suspicion at that point.
State v. Smethherst (Feb. 13, 1995), Clark App. No. 94-CA-24, unreported, at 3.
Thus, the question we must decide is whether Foltz had a reasonable and articulable suspicion of a DUI violation, justifying the administration of field sobriety tests. The facts known to Foltz at that time included three or four marked lane violations, which the trial court found to have been "de minimis," followed by a significant interval in which Spillers drove home with neither any traffic violations, nor any remarkable driving, together with Foltz's detection of a "slight" odor of an alcoholic beverage, which he believed to have been beer, and Spillers' admission that he had consumed "a couple" of beers.
The issue is close. However, we conclude that traffic violations of a de minimis nature are not sufficient, combined with a slight odor of an alcoholic beverage, and an admission to having consumed "a couple" of beers, to support a reasonable and articulable suspicion of Driving Under the Influence. Few of us drive any appreciable distance without committing traffic violations that could properly be characterized as "de minimis." By themselves, then, traffic violations of a de minimis nature are not indicative of impaired driving. Otherwise, virtually every motorist could reasonably be suspected of impaired driving, since virtually every motorist, driving a distance of several miles, will fail to signal a lane change; touch, or even slightly cross, a line marking a lane; or exceed the speed limit slightly. Furthermore, a slight odor of an alcoholic beverage, without more, is not indicative of impaired driving. The law prohibits driving under the influence of alcohol; it does not prohibit driving after the mere consumption of an alcoholic beverage. State v. Taylor
(1981), 3 Ohio App.3d 197, at 198.
The closer question, of course, is whether the conjunction of these facts — nominal traffic violations combined with a slight odor of alcohol — is sufficient to create a reasonable articulable suspicion of Driving Under the Influence. Because, in our experience, virtually the entire motoring public commits nominal traffic violations regularly, we conclude that even the conjunction of these facts is insufficient to create a reasonable articulable suspicion of Driving Under the Influence. A slight odor of an alcoholic beverage is insufficient, by itself, to trigger a reasonable suspicion of DUI, and nominal traffic violations, being common to virtually every driver, add nothing of significance. Accordingly, we conclude that the trial court did not err in finding that the detention of Spillers for the purpose of administering a field sobriety test was unlawful.
The State's sole assignment of error is overruled.
 III
The State's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.