# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-1634

_____

Audio Odyssey, Ltd., an Iowa     *
Corporation; Dogan A. Dincer;     *
Ann M. Dincer,     *
    *
         Appellants,     *
    *
     v.     *
    *
Brenton First National Bank,     *
an Iowa Banking Corporation;     *    Appeal from the United States
Michael M. Bladel, Sheriff of     *    District Court for the
Scott County, Iowa; John M. Norris,     *    Southern District of Iowa.
Deputy Sheriff of Scott County, Iowa;     *
Charles A. Barton; John C. Bradley;     *
Chris A. Pieper; Roger Hoffman;     *    [TO BE PUBLISHED]
Merchants Bonding Company,     *
a Corporation,     *
    *
         Appellees.     *
_____

Audio Odyssey, Ltd., an Iowa     *
Corporation; Dogan A. Dincer;     *
Ann M. Dincer,     *
    *
         Appellants,     *
    *
     v.     *
    *
Bernard J. Hofmann;     *
Anderson & Nelson,     *

a professional corporation,          *
                                             *

        Appellees.          *

_____

Submitted:  September 13, 2001
Filed:  April 10, 2002

_____

Before WOLLMAN,[1] Chief Judge, McMILLIAN, BOWMAN, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, MURPHY, BYE, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Audio Odyssey and its owners brought a variety of claims under 42 U.S.C. § 1983 and state law against Brenton First National Bank, the Bank's attorney and law firm, the Bank's bonding company, various Scott County officials, and a loan officer of the Small Business Administration (SBA).  The claims sought redress for the defendants' mishandled execution of an *ex parte* writ of replevin authorizing the seizure of Audio Odyssey's inventory, fixtures, accounts, furniture, equipment and machinery.

The district court dismissed the owners' individual claims for lack of standing as well as Audio Odyssey's § 1983 claim against the SBA loan officer.  The district court later granted summary judgment to the defendants on all federal claims and subsequently dismissed the remaining state law claims under 28 U.S.C. § 1367(c).

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

Audio Odyssey and its owners perfected an appeal from the district court's multiple adverse rulings. A divided panel of our court affirmed in part, reversed in part, and remanded for further proceedings. Audio Odyssey, Ltd. v. Brenton First Nat'l Bank, 245 F.3d 721 (8th Cir. 2001). We granted rehearing en banc, vacated the panel opinion, and heard additional arguments. Having considered the many issues raised by the parties' suggestions for panel rehearing and rehearing en banc, we now reinstate the panel opinion in full.

The panel opinion addresses the full array of issues presented in this appeal in considerable detail. We cannot improve upon that opinion's discussion, but we do feel obliged to respond briefly to the thoughtful dissenting opinion, which now offers three arguments suggesting the absence of any Fourth Amendment violations.

First, the dissent states "it was constitutionally reasonable for the sheriffs to construe the writ as authorizing them to close the store for a reasonable period while the replevied property was inventoried and removed." Post at 8. While true, this statement does not go far enough. Tabulating and removing Audio Odyssey's personalty undoubtedly took time. Had the Bank and the sheriff moved expeditiously to inventory and remove Audio Odyssey's property while the store was closed, a Fourth Amendment claim would surely fail. But that is not what transpired. The Bank was unprepared to cart away Audio Odyssey's personalty on Friday, July 14, or even Monday, July 17—despite the sheriff's requirements to this effect. Instead, the Bank and the sheriff dallied until the middle of that week even to *commence* their inventorying. During that period, the defendants unreasonably deprived Audio Odyssey of its leasehold estate. Audio Odyssey was entitled to possess the store premises even though it was not entitled to some of its personalty. And Audio Odyssey's interest was hardly ephemeral. Among other aspects of its business, it operated a service center and repair department. It serviced warranty claims and received consignments of other electronic equipment owned by consumers for resale in which the Bank had no financial or security interest whatsoever. Beyond that,

-3-

there were product lines (Sony, for example) located upon the premises also held for resale in which the Bank did not own a security interest and to which the replevin order did not apply.

The value of being allowed to continue in business without the inventory financed by the bank at its disposal may not have been conceptualized in its business plan as initially intended, however, there remained a legitimate business interest in continuing viable operations after the replevin action ran its course pursuant to the court order. While such value may not have been substantial, Audio Odyssey is nevertheless entitled to the consideration of damages, even if nominal (and the retention of its supplemental state law claims in the district court) for the constitutional violation.

Second, the dissent relies on a three-party lease assignment only partially executed by Audio Odyssey and the Bank, but not the landlord: "the lease assignment forecloses Audio Odyssey's claim that the initial entry violated its Fourth Amendment rights." Post at 10. Assuming *dubitante* that the lease assignment is valid in the first place, we fail to understand how the dissent's argument furthers the analysis. The panel opinion did not hold, nor do we, that the initial entry alone violated the Fourth Amendment. To the extent the lease assignment may be read to permit the Bank to take possession of the store premises in order to remove or sell the personalty, this right would not extend further than the writ of replevin the Bank actually obtained and executed. And even if the lease assignment permitted the Bank to transfer possessory interest to another party, the facts of this case reveal the Bank never took such action. Thus, the arguments advanced above explain adequately why the defendants' seizure under that writ was constitutionally impermissible.

Third, the dissent appears to argue the defendants did not violate the Fourth Amendment because Audio Odyssey bears some measure of blame for making no attempt to seek judicial relief to reacquire the store property. Post at 11-12. We do

not believe the record fully supports this characterization of Audio Odyssey's conduct after the seizure was accomplished. In any event, Audio Odyssey's delay—if such it was—may well reflect its minimal damages. Perhaps its owner did not act more quickly because little could be done to salvage the business's good name and capital investment. But this point would do nothing to vitiate an underlying Fourth Amendment violation. Defendants who violate the Fourth Amendment must be held accountable for their actions, even if the ultimate measure of damages assessed seems hardly to justify the time and expense of litigation. A failure to mitigate damages is not an affirmative defense to a constitutional tort. And it is not the law that state actors may violate the constitutional rights of others, yet avoid liability for their actions simply because the injured victim does not suffer very much.

HANSEN, Chief Judge, specially concurring.

I concur in the court's reinstatement of the prior panel opinion, which affirmed in part, reversed in part, and remanded the case to the district court, except I do not concur in those portions of Part IV A and Part IV B of the prior panel opinion which hold that the initial execution of the writ of replevin by the deputy sheriff on Friday afternoon by closing the store and changing its locks constituted an unreasonable seizure of Audio-Odyssey's leasehold interest in violation of the Fourth Amendment. In my view, the initial seizure was constitutionally reasonable, and the sheriff's department's seizure of the premises only became unreasonable under the Fourth Amendment when the inventorying deputy turned the newly minted keys to the store over to the Bank on the following Wednesday afternoon after he had inventoried the personal property for the purposes of the writ. To the extent the court's opinion can be read otherwise, I do not concur in it. In order to make my position more clear, I join the dissent's factual recitation, chronology, and the analysis Judge Loken makes in Part A of that dissent; however, I do not join the balance of the dissent.

-5-

LOKEN, Circuit Judge, with whom BOWMAN, WOLLMAN, and MURPHY, Circuit Judges, join, dissenting.

I adhere to my dissent from Part IV of the reinstated panel opinion. 245 F.3d at 742-43. Chief Judge Hansen's special concurrence joins Part A of this dissent, which is therefore the opinion of the court overruling Part IV A of the panel opinion.

As the court recognizes, the key to Audio Odyssey's Fourth Amendment claims is "whether there is a triable claim that Sergeant Barton and Deputy Norris committed a constitutionally unreasonable seizure of the real property" when they executed the state court's writ of replevin. 245 F.3d at 735. If the state actors did not violate the Fourth Amendment, then Audio Odyssey has no § 1983 claim against their alleged private conspirators, the Brenton Bank and its officers and attorney. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999).

Audio Odyssey contends the deputy sheriffs violated the Fourth Amendment in two ways, by seizing and locking down the store premises on the evening of Friday, July 14, 1995, and by unreasonably barring Audio Odyssey as tenant from regaining possession of the premises for the following six weeks. To put these issues in sharper focus, the following is a brief chronology of this time period:

| | |
|---|---|
| July 14: | Brenton Bank commences replevin action in state court, obtains writ of replevin, and delivers the writ to Sergeant Barton at the Sheriff's office. Deputy Norris serves the writ, and the Audio Odyssey store is closed. Norris posts "no trespassing" signs, and a locksmith hired by the Bank changes the locks. |
| July 17: | Deputy Norris meets with Bank representatives at the store. Store employees retrieve personal possessions not subject to the writ. Norris and the Bank agree to |

inventory the personal property in the store on Wednesday, July 19.

July 19:  Inventory begun and completed. Deputy Norris delivers keys and the completed inventory list to the Bank and quits the premises, without removing the "no trespassing" signs.

July 26:  Audio Odyssey demands that the Bank either allow time to arrange a sale of the business, or reinstate Audio Odyssey on the premises with a working capital loan and a public apology.

August 2:  Audio Odyssey sends a certified letter to the Rock County Sheriff demanding that he "surrender possession" of the store premises.

August 4:  Audio Odyssey files motion to dismiss the replevin action.

August 11:  Hearing on the motion to dismiss.

August 16:  State court denies motion to dismiss. Another Audio Odyssey creditor obtains a writ of replevin and removes Sony products from the store pursuant to its purchase money security interest.

August 17:  When notified Audio Odyssey's motion to dismiss had been denied, the Bank arranges to remove its collateral.

August 25:  Bank removes the collateral and places it in storage.

August 31:  Trial of the replevin action is delayed indefinitely. State court orders that Audio Odyssey may regain access to the premises and remove the "no trespassing" signs.

October 12:          Landlord bills Brenton Bank for unpaid rent from July 14 to August 31. (Bank later pays more than $3500.)

**A. Was the Initial Seizure Constitutionally Reasonable?** The writ of replevin directed the sheriff to seize "[a]ll inventory, fixtures, accounts, furniture, equipment and machinery on property described as follows: [the legal description of the Audio Odyssey store premises]." Sergeant Barton and Deputy Norris testified that they thought this authorized seizure of the store premises. They were mistaken in that regard, though I do not share the court's view that deputy sheriffs who fail to parse a state court order with the legal acumen of lawyers and federal judges thereby lose the benefit of qualified immunity. See, e.g., Saucier v. Katz, 121 S. Ct. 2151, 2158-59 (2001). But I put qualified immunity aside, because the merits of the Fourth Amendment issue are more important. It is clear that the sheriffs' faulty interpretation of the writ of replevin is not dispositive -- the Fourth Amendment issue turns on the objective reasonableness of their conduct, not on their subjective intent. See Whren v. United States, 517 U.S. 806, 814 (1996). In my view, there are two distinct reasons why the initial seizure was objectively reasonable.

1. The writ authorized immediate seizure of substantially all the personal property located in the store premises. To execute the writ, the personal property found in the store needed to be inventoried to determine what was subject to seizure. That process takes time. Because removal of all the personalty covered by the writ would obviously have left the store inoperable until Audio Odyssey could acquire new "inventory, fixtures, accounts, furniture, equipment and machinery," it was constitutionally reasonable for the sheriffs to construe the writ as authorizing them to close the store for a reasonable period while the replevied property was inventoried and removed.

The writ was served late on a Friday afternoon. Brenton Bank wanted to move quickly because Audio Odyssey had scheduled a major sale the next day, which

would doubtless dispose of a portion of the Bank's inventory collateral. The court criticizes the sheriffs for acceding to a "zealous creditor's" demands. 245 F.3d at 738. But the law requires a sheriff to act decisively when a creditor has obtained a court order enforcing a drastic legal remedy such as replevin, a remedy that is available to protect the rights of secured creditors. Perhaps Brenton Bank acted unreasonably as a creditor. That is a matter between Audio Odyssey and the Bank governed by state law, not § 1983. In this type of situation, the Fourth Amendment is rarely implicated. See Soldal v. Cook County, 506 U.S. 56, 71-72 (1992).

2. In 1991, as a condition to obtaining a loan from Brenton Bank guaranteed by the Small Business Administration, Audio Odyssey signed a document entitled Assignment of Real Estate Lease and Agreement, on a form prescribed by the SBA, which provided in relevant part:

> 4. In the event of any default by Borrower [Audio Odyssey] in the performance of any of the obligations of [its] note to Assignee [the Bank] evidencing the aforesaid loan, any renewal or extension thereof, or any other agreement made in connection therewith, including [its] agreements herein, then, Assignee, at its option, may, without notice, using such force as may be necessary, enter said leased premises and do any one or more of the following:
>
> a.      Remove all property of Borrower therefrom that is hypothecated as collateral for its aforementioned loan.
>
> b.      Sell the property referred to in paragraph a. on said premises.
>
> c.      Transfer and assign said lease and Borrower's rights therein to parties satisfactory to Assignee . . . .

Under Iowa law, "[w]hen one accepts the assignment of a lease . . . . [h]e stands in the shoes of the lessee at least for the period of time he occupies the premises." Berg v. Ridgway, 140 N.W.2d 95, 99 (Iowa 1966); accord Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc., 579 N.W.2d 823, 833-34 (Iowa 1998).  Therefore, the lease assignment forecloses Audio Odyssey's claim that the initial entry violated its Fourth Amendment rights -- because the Bank as assignee had the right to take possession of the leased premises "using such force as may be necessary," the deputy sheriffs acted in an objectively reasonable manner in helping the Bank take possession peaceably, at least for the purpose of removing its collateral.[2]

Audio Odyssey argues that the Assignment of Real Estate Lease was invalid because the store's landlord never signed it.  I disagree.  In general, "an express restriction against an assignment does not render an assignment void as between the lessee and the assignee, and as between such parties it is still effectual to carry the interest of the lessee."  49 Am. Jur. 2d Landlord & Tenant § 1110 (1995).  That principle should certainly apply here, because Audio Odyssey's promise to assign the lease in the event of default was a precondition to obtaining the bank loan and SBA guarantee.  Moreover, a landlord who is entitled to reject a lease assignment waives that right and consents to the assignment if he does not object promptly.  See Restatement (Second) of Property: Landlord & Tenant § 15.2 cmt. f (1977).  Here, the store's landlord knew no later than July 24 that the Bank had taken possession.  Rather than object, the landlord billed the Bank for unpaid rent in October, consistent with a waiver of any right to object.

---

[2]The Bank's attorney testified that he told a deputy sheriff about the lease assignment on July 14, before the writ was served, but did not present a copy of that agreement.  It was objectively reasonable for the deputy sheriffs to accept that representation as establishing the Bank's right to take over the store premises.

**B. Was the Seizure of the Store Unconstitutionally Extended?** I agree with the court that the Fourth Amendment protects against a seizure which, though initially reasonable, is extended for an unreasonable period of time. Our Terry stop cases, for example, confirm that principle. But I do not agree the principle was violated.

If the Assignment of Real Estate Lease gave Brenton Bank the right to possess the store premises after declaring a default, then the claim that the initial seizure was unconstitutionally extended necessarily fails. The point is not that Audio Odyssey lost its tenant's right of possession. The point is that the Assignment gave the Bank a competing right of possession that included, not only the removal of its collateral, but also the right to "[t]ransfer and assign said lease . . . to parties satisfactory to Assignee." In these circumstances, when Deputy Norris completed the task of supervising execution of the writ of replevin on July 19, it was not constitutionally unreasonable for him to deliver the keys to the premises to one of the parties entitled to possession.

But even ignoring the Assignment of Real Estate Lease, so that the initial seizure of the store premises may only be upheld as a reasonable temporary measure to permit inventory and removal of the replevied personal property, I conclude that on the facts of this case the deputy sheriffs did not violate the Fourth Amendment by reason of the lengthy process which followed the initial seizure before Audio Odyssey regained possession of the store. Having protected employees and others with an interest in the personal property by conducting an inventory of the property found on the premises, Deputy Norris reasonably concluded on July 19 that the Sheriff's role in executing the writ of replevin was concluded. This court asserts that Audio Odyssey was denied its "unquestioned legal right . . . to enjoyment of the empty premises . . . . for an indefinite period, and for an unauthorized purpose." 245 F.3d at 738. But on July 19, every aspect of that assertion was open to question. The store was not empty, the Bank asserted the right to continued possession (correctly, in my view, given the lease assignment), and Audio Odyssey had made no attempt to

seek judicial relief. In these circumstances, I conclude Deputy Norris was objectively reasonable in surrendering keys to the store to the Bank, leaving the private parties and the state court to sort out remaining legal issues.

Once the deputy sheriffs had surrendered the keys and quit the premises, I simply cannot fathom how they could have had a Fourth Amendment duty to restore Audio Odyssey to possession of the store. The state court issued the writ of replevin and could have vacated the writ or issued an order allowing Audio Odyssey to regain possession of the store. Yet Audio Odyssey never asked the court for emergency relief granting it possession. Although Audio Odyssey belatedly wrote the Sheriff on August 2 demanding return of the premises, the state court was the proper authority to resolve any dispute over possession of the store premises. Not until August 4 -- nineteen days after the initial seizure -- did Audio Odyssey move the court to dismiss the Bank's replevin action. This lack of diligence is not surprising, because an empty store would have been of no immediate value to Audio Odyssey unless it had the financial ability to restock. Audio Odyssey's July 26 demand to the Bank strongly suggests that Audio Odyssey lacked the capital necessary to resume store operations on its own.

The Fourth Amendment question is whether the deputy sheriffs were objectively unreasonable in extending the duration of the replevin seizure. Audio Odyssey's failure to assert its non-obvious claim to renewed possession of the store premises is relevant in weighing whether the deputy sheriffs were responsible for unconstitutionally extending the seizure. On this record, I conclude the district court properly granted summary judgment dismissing this claim.

For the foregoing reasons, I would affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.