COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Frank and Felton
Argued at Chesapeake, Virginia


DONALD MORLIN CHRISTIAN

MEMORANDUM OPINION* BY
v.        Record No. 0303-03-1        JUDGE JAMES W. BENTON, JR.
                                                           MARCH 2, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Russell I. Townsend, Jr., Judge

Albert L. Fary, Jr., for appellant.

Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


The trial judge denied a motion to suppress evidence the police seized from Donald Morlin

Christian, and the judge convicted Christian of possession of cocaine with intent to distribute and of

improper driving. Christian contends the trial judge erred in ruling that the police lawfully frisked

him for weapons during a traffic stop. We agree and reverse the conviction for possession of

cocaine with intent to distribute.

I.

The evidence proved that Officers T.A. Thursby and M.G. Crutcher were patrolling on

bicycles at night when they saw a car accelerate with its tires spinning. As the car approached them,

they moved into the car's travel lane. Officer Thursby testified that the car "started slowing and

then eventually stopped." Both officers testified that they were wearing bicycle uniforms and that

they identified themselves as police officers to the driver. The driver, whom they identified as

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Christian, looked at both officers and drove away. Officer Thursby testified that he "had to jump out of the path of the vehicle" and that he "immediately radioed the information of the [car] to include a description of the driver." Officer Crutcher testified that Officer Thursby "put a [be on the lookout] on the radio for that vehicle and what it was wanted for."

Detective Lodge heard the radio report and stopped the car a short distance away. In response to the judge's questions about the radio dispatch, Detective Lodge testified that the report indicated "the vehicle was driving reckless in the area, and the vehicle had almost hit the officers who were on bikes." Officer McDonald, who was in the car with Detective Lodge and assisted in the traffic stop, testified that "a description of a car that was spinning tires recklessly came over the radio" with a description of the car and driver. Responding to the judge's questions, Officer McDonald testified as follows:

> [JUDGE]: And what is your recollection again of exactly what [message you received].
>
> A. That there was a car that was driving recklessly in the area, it had just left the scene, and they gave a description of a black Mercedes.
>
> [JUDGE]: Did they indicate what the nature of the recklessness was?
>
> A. Spinning tires.
>
> [JUDGE]: Anything else.
>
> A. No; not that I recall.

Officer McDonald testified that the car was traveling within the twenty-five mile per hour speed limit when they signaled the car to stop.

When the car stopped, Detective Lodge removed Christian from the car and "patted him down for weapons." Detective Lodge testified that he frisked Christian "for [his] safety." During the frisk, he felt a bulge in Christian's sock and removed it because he believed it to be

some type of weapon.  The bulge was a glassine tube containing cocaine.  Detective Lodge also found currency and cellular telephones.

Officer Crutcher and Officer Thursby heard a radio report that the other officers had stopped the car, and they rode their bicycles to that location.  Officer Crutcher testified that they arrived during the search and that he identified Christian as the driver of the car whose wheels had been spinning.  Detective Lodge arrested Christian for possessing the cocaine.  Later at the police station, Officer Crutcher issued a summons to Christian charging him with reckless driving because of the car's "spinning tires."

The trial judge found that the officers who stopped and searched Christian had received "a dispatch or communication about reckless driving and wheels spinning."  The trial judge specifically said he was "not finding" that the communication indicated Christian had hit the bicycle officers or put them in jeopardy.  The judge found that the officers stopped Christian based on a report of reckless driving and conducted a "pat-down . . . for safety reasons."  Thus, the trial judge denied the motion to suppress the evidence seized from Christian.

At the conclusion of the evidence, the trial judge convicted Christian of possession of cocaine with the intent to distribute and of improper driving.

II.

Christian contends the detective unlawfully removed him from the car because the detective did not witness the reckless driving, and he further contends the detective unlawfully frisked him because the detective lacked facts upon which to conclude Christian was armed and dangerous.  The Commonwealth replies that the detective was entitled to remove Christian from the car after a lawful traffic stop and that the detective properly frisked Christian because he posed a threat to the detective's safety.

Initially, we note that Christian does not challenge the lawfulness of the detective's stop of the car upon receiving the radio dispatch.  Indeed, the Supreme Court has noted that, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren v. United States, 517 U.S. 806, 810 (1996).  Christian argues, instead, that the detective was required to use the least intrusive means of performing the investigation and, thus, exceeded his authority when he removed Christian from the car.  This argument is refuted by reference to the Supreme Court's decision in Pennsylvania v. Mimms, 434 U.S. 106 (1977).  In a footnote, the Court succinctly described its holding:  "We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."  Id. at 111 n.6. Ruling that an officer's authority to require a driver to exit the vehicle following a lawful stop for a traffic violation is an "additional intrusion [that] can only be described as *de minimus*," id. at 111, the Court implicitly rejected the notion of requiring the "least intrusive . . . investigation." Thus, we hold that the trial judge did not err in ruling the detective lawfully removed Christian from the car.

Christian's objection to the frisk for weapons raises a more substantial concern.  The Commonwealth contends that the frisk for weapons was justified because Christian "had fled the scene, endangering the officers."

The authorization for a frisk for weapons arises from the Supreme Court's holding in Terry v. Ohio, 392 U.S. 1 (1968), that an officer is permitted to frisk a suspect's outer clothing if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts," id. at 21, reasonably lead the officer to conclude that "criminal activity may be afoot" and that the suspect "may be armed and presently dangerous."  Id. at 30.

The Supreme Court has summarized the applicable principles as follows:

> [D]espite the danger that inheres in on-the-street encounters and the need for police to act quickly for their own safety, the Court in Terry did not adopt a brightline rule authorizing frisks for weapons in all confrontational encounters. Even in high crime areas, where the possibility that any given individual is armed is significant, Terry requires reasonable, individualized suspicion before a frisk for weapons can be conducted.

Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990).

Applying this test in Knowles v. Iowa, 525 U.S. 113 (1998), the Supreme Court expressly rejected the concept of "search incident to citation" during a routine traffic stop, id. at 119, and noted that the officer must have "reasonable suspicion that [the driver] may be armed and dangerous" to conduct a Terry frisk. Id. at 118. Before the Supreme Court decided Knowles, we applied this test in Stanley v. Commonwealth, 16 Va. App. 873, 433 S.E.2d 512 (1993), and we specifically rejected the assertion that a police officer could frisk a driver incident to a routine traffic stop in the absence of individualized suspicion that the driver is armed and dangerous. Id. at 876-77, 433 S.E.2d at 514-15. In another case, where the police officer frisked a driver after observing a moving traffic violation and a suspicious inspection sticker, we noted that "[t]he authority to conduct a pat-down search does not follow automatically from the authority to effectuate an investigative stop." Harrell v. Commonwealth, 30 Va. App. 398, 403, 517 S.E.2d 256, 258-59 (1999).

The trial judge found that the detective stopped Christian's car because of a radio "dispatch or communication about reckless driving and wheels spinning." The trial judge specifically noted that he was not finding that the dispatch indicated the driver had placed any officers in jeopardy. Indeed, Officer Thursby who broadcasted the report did not testify that the report indicated conduct other than reckless driving and Officer McDonald who was in the car

with the detective only heard a report of reckless driving.  The evidence supports the judge's findings.

The detective testified that he "was conducting a pat-down for [his] safety."  He did not articulate, however, any facts or circumstances that gave rise to a safety concern.  As we held in Sattler v. Commonwealth, 20 Va. App. 366, 457 S.E.2d 398 (1995), when "[t]he evidence at the suppression hearing failed to prove that the officer had specific and articulable facts upon which to conclude that [the driver] was armed and dangerous," the trial judge erred in failing to suppress the evidence.  Id. at 369, 457 S.E.2d at 400.

For these reasons, we hold the trial judge erred in overruling the motion to suppress, and we reverse the conviction for possession of cocaine with the intent to distribute.

Reversed.