**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio SHAW, Defendant–Appellant.**

No. 03–2395.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 2003.

Decided Jan. 29, 2004.

Timothy M. O'Shea, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Morris D. Berman, Madison, WI, for Defendant–Appellant.

Before EASTERBROOK, ROVNER, and EVANS, Circuit Judges.

## ORDER

Antonio Shaw pled guilty to possessing more than five grams of cocaine base (crack) with intent to distribute, but he reserved his right to appeal the district judge's denial of his motion to suppress evidence. The evidence that was not sup-

pressed included crack found in Shaw's jacket after a traffic stop, more crack found in his house by his probation officer, and a handgun found in his girlfriend's car when she was stopped for speeding.

On the afternoon of November 26, 2002, Shaw was seen several times by Madison (Wisconsin) police in an area known for drug trafficking. When Officer Bernie Gonzalez saw Shaw driving into a hotel parking lot known as a place where quick drug transactions occur, he decided to follow and see what was going on. When Shaw returned to the street, Gonzalez eventually clocked him driving 50 miles per hour in a 35 mile per hour zone. Another officer involved in the stop noticed Shaw reaching down by the left door of the car. That officer radioed this information to Gonzalez, believing that Shaw might be hiding something.

Gonzalez approached Shaw's vehicle and spoke with Shaw, who presented a driver's license, a Wisconsin identification card, and a bank card. At about this time, Officers Christine Boyd and Denise Markham, from the Dane County Narcotics and Gangs Task Force, arrived on the scene. All the officers observed that Shaw was nervous, that he stammered, and that his hands trembled.

Back at his squad car, Gonzalez checked Shaw's record, learning that he was on parole for cocaine distribution and that he had a domestic abuse restraining order against him. Officer Boyd told Gonzalez she had information that Shaw was involved with drug and firearm distribution in the Dane County area. She also knew that Shaw was the subject of several anonymous Crime Stopper calls and that he had been shot in connection with a suspected drug rip-off.

Gonzalez then went back to Shaw's car. Shaw stammered badly and fidgeted with a cigarette. On a "nervousness" scale of 1 to 10, Gonzalez rated Shaw as a "nine to ten," among the most nervous motorists he had dealt with in his 11–year career.

Gonzalez then asked Shaw to step out of the car. When asked, Shaw refused to consent to a search of his person or vehicle. Gonzalez then asked Shaw to place his hands on the trunk of the car so Gonzalez could pat him down for weapons. Gonzalez then touched Shaw lightly over his outer clothing. Shaw became even more nervous. When Gonzalez patted the area over Shaw's breast pocket, he felt a large, round, hard object. At the same time, he heard plastic "crinkle." When Gonzalez pressed in slightly, he felt separation between pieces of the material and a few hard corners. Based on the object's feel and sound, as well as his experience, including some 100 purchases of drugs and drug arrests, Gonzalez suspected that the object he felt was crack cocaine.

Gonzalez proceeded with the pat-down, pretending he hadn't felt anything unusual. He then felt what he thought was a large sum of currency in Shaw's left front pants pocket. Gonzalez asked how much money he had, and Shaw said he didn't know. According to Gonzalez, Shaw became much more nervous at this point, so Gonzalez placed him under arrest and applied handcuffs. He then pulled a baggie containing 41 grams of crack from Shaw's jacket and $2,829 in cash from his pants.

Shaw was taken to the Dane County jail and booked on drug charges; later that day, he also received a ticket for driving at an imprudent speed. At some point, Shaw asked Officer Boyd to contact his girlfriend "Kena," who turned out to be Scheneka Davis, so she could watch his 7–year–old son. To make a long story short, police ended up following Davis as she drove 70 miles per hour in a 55 mile per hour zone. She was stopped for speeding.

A search of the car she was driving disclosed a .9mm Luger semi-automatic gun partially concealed in a Crown Royal bag. Tests later found Shaw's fingerprints on the gun. (It's perhaps worth noting here that Shaw was also charged with being a felon in possession of a firearm, but that charge was dismissed when he entered a guilty plea to the drug offense.)

Back at the police department, Officer Hahn called Matt Hanneman, Shaw's probation agent, to let him know that Shaw was under arrest. (Calls of this nature are customary when someone on parole is arrested.) Hahn told Hanneman the details about Shaw's arrest and offered to provide any needed assistance, such as security, if the probation officer wanted to search Shaw's home. Hanneman subsequently discussed Shaw's arrest with his supervisor, who approved a probation search of Shaw's home.

The next day Hanneman, accompanied by other probation officers and police officers from the Dane County Narcotics and Gang Task Force, went to Shaw's apartment. The police officers stood by while the probation officers searched the premises. The probation officers found 249 grams of crack, $9,378 in cash, a small scale, several handgun clips, and a box of .9mm bullets. In a post-search report, Hanneman wrote, "Officer Hahn then requested that Probation & Parole conduct a home search at Mr. Shaw's approved residence...." Hanneman subsequently filed a second report 5 days later, explaining that Hahn had not requested the search, but that he (Hanneman) decided on his own to request permission from his supervisor for the home search.

Shaw moved to suppress evidence on several grounds, contending that he was impermissibly stopped and searched and that all evidence seized following his stop was "fruit of the poisonous tree." He also alleged that the police improperly requested a probation search of his home and that the stopping of Ms. Davis's car and the search that followed were improper. Magistrate Judge Stephen L. Crocker held an evidentiary hearing on Shaw's motion and subsequently recommended that it be denied in all respects except for the evidence seized during the probation search. District Judge John C. Shabaz, however, took a different view, as he denied the motion to suppress on all grounds.

■ Regarding Officer Gonzalez's stop of Shaw's car and the search that followed, he wrote:

Officer Gonzalez believed Shaw was speeding based on his own observations together with Officer Patterson's statement concerning his observations. Pursuant to *Whren* Officer Gonzalez had probable cause to stop Shaw for speeding regardless of any ulterior motives. The Court adopts the Magistrate Judge's conclusion that there was probable cause for the vehicle stop on November 26, 2002.

Defendant Shaw objects to the conclusion of law that the pat down search was constitutional because it was made pursuant to the arrest for speeding. The Fourth Amendment does not protect motorists from full arrest upon commission of a simple moving violation. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). Accordingly, Shaw's constitutional rights were not violated by the stop or the search.... The Court adopts the Magistrate Judge's finding that the pat down search was constitutional and will not suppress the evidence seized in this search.

The district judge did not adopt the magistrate judge's recommendation to

grant the motion to suppress as it related to the probation search, writing:

It is undisputed that Officer Hahn did not request defendant's parole agent to search Shaw's residence. Hahn informed parole agent Hanneman that Shaw had been pulled over and crack cocaine and $2,828 .00 was found in his possession. Hanneman was also informed that information had been received that the defendant was selling drugs from his residence. Hanneman may have believed that Hahn wanted him to perform the search but independent evidence existed to support the search. Further, Hanneman's supervisor approved the search based on independent reasons and evidence. The intervening approval of Hanneman's supervisor supports the conclusion that the search was not performed on behalf of the task force. The parole office exercised discretion independently.

The fact that defendant had been arrested with cocaine and cash in his possession was reasonable grounds for the search of his home for evidence of drug dealing. As the Magistrate Judge found Hahn's telephonic briefing provided the parole agent with reasonable grounds for a search of the residence. Although Hanneman may have thought that Hahn asked him to perform the search, the search was not performed for that reason. Rather, the search was performed after obtaining approval from his supervisor based upon reasonable grounds to believe that evidence of a crime would be found in defendant's residence. The search was lawful according to *United States v. Coleman.*

In addition, there were no constitutional violations during the stop and arrest of defendant and the search of his residence was not tainted by any prior unlawful searches or seizures by the police. The Court will not accept the recommendation to suppress the evidence seized in defendant's residence and it will not be suppressed.

We think the district court was correct on all counts. As we learned from *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), police may stop, arrest, and search a motorist if they have probable cause to believe a traffic violation has occurred. And it matters not that another motive, like here to investigate possible drug activity, is also present. Because the credible evidence established that Shaw was driving 50 miles per hour in a 35 mile per hour zone, the search and recovery of the crack and the money from his person was not suppressible.

■ Shaw's arguments regarding the search of the car that was driven by Scheneka Davis also must fail, most notably because he has no standing to assert a Fourth Amendment violation (if there in fact was one) of her rights.

■ Finally, the district court did not err in finding no constitutional violation relating to the probation search of Shaw's home. Here, the crucial questions were whether the probation office had "reasonable grounds" to search and whether the probation officer exercised his discretion independently. *See United States v. Coleman,* 22 F.3d 126, 129–30 (7th Cir.1994). Reasonable grounds denotes a degree of certainty less than that of probable cause. The district court correctly found that no Fourth Amendment violation occurred for three reasons. First, as the court observed, "It is undisputed that Officer Hahn did not request defendant's parole agent to search Shaw's residence." Second, the probation officer had reasonable grounds to search, and third, the probation supervisor approved the search. And the last point—the intervening approval of the

search given by Hanneman's supervisor supports the conclusion that the office acted independently. We therefore can rest our discussion on this point without considering other potentially valid reasons for not suppressing the evidence seized from Shaw's home, namely, the possible inapplicability of the exclusionary rule to the evidence seized in this situation.

AFFIRMED.