904 So.2d 594 (2005)
STATE of Florida, Appellant,
v.
Frankie RODRIGUEZ, Appellee.
No. 5D04-1216.
District Court of Appeal of Florida, Fifth District.
June 17, 2005.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Kellie Nielan, Assistant Attorney General, and Elizabeth C. King, Attorney, Daytona Beach, for Appellant.
*595 James S. Purdy, Public Defender, and Lyle Hitchens, Assistant Public Defender, Daytona Beach, for Appellee.

THOMPSON, J.
The state appeals an order suppressing cocaine seized after law enforcement officers stopped Frankie Rodriguez for a traffic law violation. The trial court ruled Rodriguez did not violate any civil traffic infraction and his unusual driving style did not justify the stop. Concluding Rodriguez' driving provided an objectively reasonable basis for making the stop, we disagree and reverse. See Whren v. U.S., 517 U.S. 806, 808, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Holland v. State, 696 So.2d 757, 759 (Fla.1997).
Sergeant Hopkins ("Hopkins") of the Orange County Sheriff's Office testified that at about 2:00 a.m. on 16 December 2003, while parked on the right-of-way on Bumby near the East-West Expressway, he saw a vehicle exit from either a business or Jackson Street, but he could not ascertain which. However, he did think the intersection of Bumby and Jackson was controlled by a stop sign. The vehicle was traveling at a high rate of speed, and it was obvious from its speed that the driver had not stopped before entering the roadway. A vehicle is required to stop before entering a roadway from a parking lot. The area was residential, and the speed limit was 25 m.p.h. Hopkins could not clock the speed, but testified that the vehicle "just blew out of this parking lot or... blew through this stop sign." The vehicle traveled two blocks to Pine Street and turned right. It proceeded east in the westbound lane of Pine Street, which had a double yellow center line for about 30 feet. The vehicle continued in the wrong lane for about 50 feet and turned into an apartment complex. Hopkins clarified that some drivers swing out a bit when they take a right turn into a business, but this was not that type of swinging; it was definitely the wrong side of the roadway. Hopkins could have driven next to Rodriguez in the correct lane.
Hopkins thought the driver might be impaired due to his erratic driving. After the driver entered the apartment complex, he made a wide loop and parked. Hopkins, who was by then in front of the vehicle, activated his overhead lights and asked the driver to step out of the vehicle with his license. He stopped the driver to find out why he was driving erratically; he suspected Rodriguez was driving under the influence. After Rodriguez exited the vehicle, Hopkins observed that his eyes were red and glassy. His speech was slow and occasionally slurred. Hopkins smelled the strong odor of alcohol on his breath. When asked if he knew why he had been stopped, Rodriguez responded that he was stopped because he ran the stop sign. Rodriguez told him that he was coming from the Southern Nights Bar. The deputy testified that he stopped the driver for driving on the wrong side of the road and running a stop sign. Hopkins arrested Rodriguez for DUI and transported him to the DUI center for booking.
After removing the subject from the patrol car at the DUI center, Hopkins found Rodriguez' keys on the seat and a stamp-sized baggy of suspected cocaine. Hopkins had checked the vehicle before placing him inside, and there were no keys or baggy in the patrol car. Another baggy was found in Rodriguez' pocket, and a presumptive test proved positive for cocaine. Rodriguez was charged with possession of cocaine.
Rodriguez filed a motion to suppress arguing that Hopkins had no probable cause to believe that he was committing or about to commit a crime. He contended *596 that he did not commit a traffic violation and his driving did not justify the stop.
The state argued that Rodriguez violated two Florida Statutes: Section 316.125(2), which requires a driver of a vehicle emerging from an alley, building, private road or driveway within a business or residential district to stop prior to entering a roadway, and section 316.081, which prohibits driving on the wrong side of the roadway. During the hearing, the court appeared to adopt the facts provided by the deputy, but ruled that Rodriguez had not violated any traffic laws and, apart from civil traffic infractions, the circumstances did not establish articulable grounds to believe Rodriguez was impaired. Accordingly, the court suppressed the cocaine.
A ruling on a motion to suppress presents mixed questions of law and fact. State v. Kindle, 782 So.2d 971, 973 (Fla. 5th DCA 2001). Although an appellate court must accept the trial court's findings of historical fact when reviewing the denial of a suppression motion, it must review de novo its application of established law to those facts. Curtis v. State, 748 So.2d 370, 371 (Fla. 4th DCA 2000). The standard of review is whether the trial court's finding is supported by competent, substantial evidence. In the present case, the question is whether Hopkins' decision to stop Rodriguez' vehicle was reasonable and supported by the facts. The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whren, 517 U.S. at 808, 116 S.Ct. 1769.
We begin our analysis by focusing on Rodriguez' driving pattern, as perceived by the deputy. Rather than consider whether probable cause existed for the stop, the parties discussed the two traffic statutes at length at the hearing. Section 316.125 requires in subsection (1) that a vehicle entering the road from a private road or driveway yield to approaching road traffic, and in subsection (2) that a vehicle entering a road from a private road or driveway in a business or residential district stop before entering the road.[1]
Defense counsel pointed out to the court that section 316.003 defines residential and business districts.[2] Counsel also discussed section 316.081, which provides that a vehicle should be driven on the right side of a road if the road is of sufficient width. He *597 also mentioned section 316.089(1), which provides that a vehicle being driven on a road divided into clearly marked lanes should not be moved out of the lane unless the driver has ascertained that it is safe to do so.
The court ruled that Rodriguez had not violated section 316.125, because there was no evidence that the area where Rodriguez entered the road was a residential or business district. The trial court stated:
[Section] 316.125 is not a model of clarity for the Courts. In [subsection] (2), I believe what the Legislature meant is that when you emerge from a building or an alley or a private road or driveway within a business or residential district, you shall stop the vehicle immediately prior to driving either onto a sidewalk or entering a highway where there is no sidewalk. And I think that if this is a business district, then the defendant had an obligation to stop and yield under [subsection] (2). If it's not a business or residential district and you're about to enter or cross a highway, then you shall yield the right-of-way. The problem is, I don't know what we have here, and I just  I don't know if this is a business or residential district, and I don't really have any testimony as to that.
The court further ruled that Rodriguez had not committed an infraction by driving in the wrong lane and that the circumstances did not give rise to grounds to stop him on suspicion of driving under the influence:
The testimony is that the deputy observed the defendant leave this area at a high rate of speed, turn right on Bumby, proceed up Bumby for two blocks to Pine Street, turn right on Pine Street. When he got to Pine Street, he observed him, in his testimony, driving in the wrong lane of traffic and then turn into an apartment complex.
The highway is marked close to the intersection of Bumby and Pine by a double yellow line, so that it's clear, at that part of the highway, that there's no passing that's permitted and the lanes are marked. However, I'm not sure how long that is. But that double yellow line ends and there's no centerline marking, and there's apparently cars that are permitted to park on both sides of Pine Street.
The deputy testified, however, that he observed the defendant driving in the far left-hand side of the roadway. Although he also testified that there was no on-coming traffic that the defendant interfered with, it was just that he was driving completely on the wrong side of the road before he turned into the apartment complex on the right. Pretty clear that entryway is marked in the sense that there is a white stop bar for vehicles exiting the apartment parking lot onto Pine Street to stop, I'm sure in that instance to yield to any on-coming traffic.
The deputy testified that, based on the totality of the circumstances, he felt that he possessed articulable facts that the defendant was under the influence; that he had left the area of a bar at a high rate of speed, pulled into the  onto Bumby without stopping, crossed over  well, not crossed over a center lane, because there is no center line  was in an opposite lane of traffic before he turned into the apartment complex.
I don't believe that there is a particular traffic infraction that has occurred, based upon the facts that I've heard here, in particular, because I don't think the State proved whether this was a business or residence district under the definition of the statute. So the last inquiry is whether  despite whether there was an identifiable traffic infraction, the *598 totality of the circumstances established articulable grounds to believe that the defendant was impaired. I'm going to determine that that does not, so I'll grant the Motion to Suppress.
In deciding that Rodriguez did not commit any civil traffic infractions, the court apparently accepted defense counsel's argument Rodriguez did not enter the roadway without stopping and it is permissible to drive in the wrong lane as long as one does not interfere with other vehicles. The court also ruled that the stop was not justified based on Rodriguez' unusual driving style.
The defense counsel's deconstruction of Rodriguez' driving pattern may have been appropriate before a judge hearing civil traffic infractions; however, that is not the issue in a motion to suppress. The proper inquiry in this case was whether Hopkins had probable cause to stop Rodriguez based on his driving pattern. In Whren, the United States Supreme Court held that the validity of a traffic stop is determined by considering whether the officer who stopped the vehicle had an objective reason for stopping the vehicle. Id., 517 U.S. at 814, 116 S.Ct. 1769. The constitutional reasonableness of a traffic stop does not depend upon the subjective motivations of the officer who stopped the vehicle. Id. The Florida Supreme Court in Holland, 696 So.2d at 760, recognized and applied the objective test enunciated in Whren to Florida cases, retreating from the "reasonable officer test" established in State v. Daniel, 665 So.2d 1040 (Fla.1995).
A stop may be justified even in the absence of a traffic infraction when the vehicle is being operated in an unusual manner. Ndow v. State, 864 So.2d 1248, 1250 (Fla. 5th DCA 2004). A legitimate concern for the safety of the public can warrant such a stop. Id.; see also Yanes v. State, 877 So.2d 25, 26-27 (Fla. 5th DCA 2004) (holding vehicle's abnormal movement in crossing fog line three times within one mile justified stop), review denied, 889 So.2d 73 (Fla.2004); State v. Carrillo, 506 So.2d 495, 496 (Fla. 5th DCA 1987) (holding stop justified where vehicle weaved within lane more than five times over a quarter mile distance); Esteen v. State, 503 So.2d 356, 357-358 (Fla. 5th DCA 1987) (stating a traffic stop was justified where vehicle was weaving within lane and moving slower than posted speed).
At 2:00 a.m., Hopkins saw Rodriguez "bl[o]w" out of a driveway or past a stop sign near a bar at an excessive rate of speed, continue to drive down the wrong side of the road across a double yellow center line, and then take a wide swing into the driveway of an apartment complex. Based on these facts, the court erred in ruling that the stop was not justified. Based upon these facts, Hopkins would have been derelict in his duties if he did not stop Rodriguez because there was probable cause based upon objective evidence to believe Rodriguez violated several Florida traffic statutes. The trial court erred in ruling otherwise.
REVERSED and REMANDED.
PALMER and ORFINGER, JJ., concur.
NOTES
[1] 316.125. Vehicle entering highway from private road or driveway or emerging from alley, driveway or building

(1) The driver of a vehicle about to enter or cross a highway from an alley, building, private road or driveway shall yield the right-of-way to all vehicles approaching on the highway to be entered which are so close thereto as to constitute an immediate hazard.
(2) The driver of a vehicle emerging from an alley, building, private road or driveway within a business or residence district shall stop the vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across the alley, building entrance, road or driveway, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon and shall yield to all vehicles and pedestrians which are so close thereto as to constitute an immediate hazard.
(3) A violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318.
[2] (4) Business district.  The territory contiguous to, and including, a highway when 50 percent or more of the frontage thereon, for a distance of 300 feet or more, is occupied by buildings in use for business.

* * *
(38) Residence district.  The territory contiguous to, and including, a highway, not comprising a business district, when the property on such highway, for a distance of 300 feet or more, is, in the main, improved with residences or residences and buildings in use for business.