958 So.2d 600 (2007)
Todd D. HURD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2270.
District Court of Appeal of Florida, Fourth District.
June 27, 2007.
*601 Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
SHAHOOD, J.
Appellant pled no contest to the charges of possession of cocaine and possession of drug paraphernalia, reserving his right to appeal the denial of his motion to suppress. We agree that this motion should have been granted and reverse and remand for vacation of the conviction and sentence.
At the hearing on the motion to suppress, the State called Deputy Anthony Kibler. On August 20, 2005, Kibler was on road patrol when he came across a silver Chevy pickup truck around nine in the evening. Kibler drove behind the truck and noticed the driver looking in his mirror and kind of driving slow. The driver *602 would speed up, then drive slow. Kibler followed the truck for approximately two miles. When the truck approached an intersection, it was in the far left-hand lane and without warning crossed over a solid white line into the right lane and did not use a turn signal. Kibler initiated a traffic stop, approached the driver and obtained the driver's license, which identified him as appellant. Subsequently, a search of appellant was conducted which revealed drugs.
On cross-examination, Kibler admitted that there were no other cars around, except his, when appellant changed lanes. Kibler testified that he observed appellant commit two traffic violations, the failure to maintain a single lane and a failure to signal.
Appellant testified that, while driving in his car, he noticed an officer behind him. Appellant said the officer pulled up really close behind him, about eight to ten feet behind. Appellant saw that the officer was on the radio and thought there may be an emergency and that the officer needed to get by, so appellant attempted to pull over a couple of times. When appellant approached an intersection, he decided to veer to the right most left turn lane in order to let the officer by, while his left turn signal was still on. There were no other cars on the road at that time. When the light turned green, appellant proceeded through the intersection and the officer turned on his siren and appellant pulled over.
In denying the motion to suppress, the trial court found:
This Court determines that the combination of both [driving] actions, as well as the officer's testimony that the Defendant was erratic in the driving actions, would cause any reasonable officer to stop the driver out of concern for the welfare of the driver and for violation of two traffic offenses committed directly in front of the officer.
Under search and seizure law, the stopping of a motorist is reasonable where a police officer has probable cause to believe a traffic violation has occurred. See Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Petrel v. State, 675 So.2d 1049, 1050 (Fla. 4th DCA 1996). The test is whether a police officer could have stopped the vehicle for a traffic violation. Id.
The constitutional validity of a traffic stop depends on purely objective criteria. Whren, 517 U.S. at 813, 116 S.Ct. 1769. The objective test "asks only whether any probable cause for the stop existed," making the subjective knowledge, motivation, or intention of the individual officer involved wholly irrelevant. Holland v. State, 696 So.2d 757, 759 (Fla. 1997).
Appellant was stopped for violating sections 316.155 and 316.089, Florida Statutes (2005).
Section 316.155 delineates the requirements for using a turn signal:
(1) No person may turn a vehicle from a direct course or move right or left upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal in the manner hereinafter provided, in the event any other vehicle may be affected by the movement.
(2) A signal of intention to turn right or left must be given continuously during not less than the last 100 feet traveled by the vehicle before turning, except that such a signal by hand or arm need not be given continuously by a bicyclist if the hand is needed in the control or operation of the bicycle.
*603 § 316.155, Fla. Stat. (2005). Failure to signal as required by this section is a moving violation, thus giving an officer probable cause to stop a vehicle that does not signal appropriately. S.A.S. v. State, 884 So.2d 1167, 1168 (Fla. 2d DCA 2004).
However, the Florida Supreme Court has held that section 316.155 requires a signal only if another vehicle would be affected by the turn. State v. Riley, 638 So.2d 507 (Fla.1994). When no other vehicle is affected by a turn, then a signal is not required by the statute. Id. at 508. If a signal is not required, then a traffic stop predicated on failure to use a turn signal is illegal and any evidence obtained as a result of that stop must be suppressed. Id.; see also Frierson v. State, 851 So.2d 293 (Fla. 4th DCA 2003), quashed on other grounds, State v. Frierson, 926 So.2d 1139 (Fla.2006).
Here, according to the testimony of both the officer and appellant, no other traffic on the road was affected by appellant's failure to signal and therefore appellant's actions did not provide probable cause for a stop.
Section 316.089 provides in pertinent part:
Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply:
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
§ 316.089, Fla. Stat. (2005). However, the failure to maintain a single lane alone cannot establish probable cause when the action is done safely. See, e.g., Crooks v. State, 710 So.2d 1041 (Fla. 2d DCA 1998) (no violation where evidence showed driving did not place any other vehicles in danger); Jordan v. State, 831 So.2d 1241 (Fla. 5th DCA 2002).
Nevertheless, the failure to maintain a single lane alone, may, under appropriate circumstances, establish probable cause. See Roberts v. State, 732 So.2d 1127, 1128 (Fla. 4th DCA 1999) (weaving several times within a single lane held sufficient to justify a stop where there was no evidence to show endangerment to others and where no traffic violation had occurred); Yanes v. State, 877 So.2d 25, 26-27 (Fla. 5th DCA 2004) (where an officer observes a driver cross the white line on the right side of the road three times within a mile, each time crossing the line by approximately one-half of the vehicle's width, provided sufficient evidence to stop the vehicle for a violation of section 316.089).
The above cases are based on the principle that a stop is permitted even without a traffic violation, so long as the stop is supported by a reasonable suspicion of impairment, unfitness or vehicle defects. Esteen v. State, 503 So.2d 356 (Fla. 5th DCA 1987); State v. Davidson, 744 So.2d 1180 (Fla. 2d DCA 1999) (evidence of abnormal driving, albeit not amounting to a traffic violation, justified stop based on reasonable suspicion of impairment).
In the case at hand, there was nothing in the record to establish probable cause that the actions by appellant were not done safely or that appellant's actions would lead an officer to suspect impairment or which could be considered erratic driving.
At the hearing, the arresting officer was asked about whether he noticed any erratic driving other than the traffic violations:
Q: Did you notice any, uh, weaving, uh, or any, any other erratic driving?

*604 A: Uh, just that he would, it, it, it appeared to me that he was looking up and looking at his rearview mirror at me and kind of slowing down, speeding up. He didn't want to go under the speed limit, but he didn't want to go over the speed limit.
On cross-examination the officer admitted no other cars were endangered and that appellant's actions were done safely:
Q: Okay, did he endanger any other vehicles when he moved from the leftmost turn lane into the rightmost turn lane?
A: There was no other vehicles there but myself.
Q: Oh, okay. And, and he didn't almost hit you or anything, you were far enough behind him to where he made that move safely?
A: Uh, no, not technically because I think, I think what happened was he, he was in the far lefthand lane and he saw me behind him, I don't know if he thought that he wanted to get out of my way or whatever and that's why he moved over. I, I don't know exactly why he, he did what he did.
Q: Okay, but regardless of, of why he did it, he, he didn't almost hit you. He was, in fact, looking in his mirror or-correct.
A: Apparently, yes, sir.
Furthermore, there were no actions other than the changing of the lane without a signal that would indicate impairment:
Q: And it, is it fair to say that after following him for two miles, uh, other than the change of lanes and, and not using the turn signal, uh, you had no reason to believe that he was impaired in any way, correct?
A: Uh, no, sir.
Q: Okay. And you had no reason to believe that other than the traffic infraction that you say you saw, that he had committed any other crime, correct?
A: No, sir.
Q: Okay. And other than, again, the traffic infraction, you had no reason to believe that he was then, at that time, committing a crime, right?
A: Not until after I pulled him over. . . .
Admittedly, the officer did observe appellant speed up and then drive slow, but even to the officer, this did not create a suspicion of impairment or constitute erratic driving. Under an objective standard, appellant's driving, while not perfect, was not sufficiently erratic, in light of the caselaw, to give rise to a reasonable suspicion of impairment. Where a motorist is stopped for an alleged traffic code violation that subsequently proves not to be a violation of any traffic law, or where there was not probable cause of a traffic infraction, the evidence seized following such a stop should be suppressed. See Riley, 638 So.2d at 508.
Accordingly, we reverse appellant's conviction and sentence and remand with instructions that an order be entered granting his motion to suppress and for further proceedings consistent with this opinion.
Reversed and Remanded.
GROSS and MAY, JJ., concur.