NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted November 4, 2008
Decided February 23, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-3546

| | |
|---|---|
| BENTON V. HUBBLE, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of |
| | Indiana, Indianapolis Division. |
| v. | |
| | No. 04 C 967 |
| MATTHEW VOORHEES, State Police | |
| Officer, individually, | Sarah Evans Barker, |
| *Defendant-Appellee*. | *Judge*. |

## O R D E R

This case involves what passes for political shenanigans in Indiana. In the late hours of an election night, Indiana State Police Officer Matthew Voohrees pulled over Plaintiff Benton Hubble's car. According to Voohrees, Hubble was speeding. Hubble claims that the traffic stop was a retaliatory act made without probable cause and solely on account of his open political support for a candidate running against the local sheriff in a primary election held earlier that day. Hubble sued Voohrees in his individual capacity and Montgomery County Sheriff Dennis Rice and Deputy Sheriff Jake Watson in both their

individual and official capacities, alleging various civil rights violations.  The district court granted summary judgement for the defendants.  Hubble now appeals the district court's judgment solely regarding Voohrees.  For the reasons stated below, we affirm.

## BACKGROUND

On May 7, 2002, Montgomery County, Indiana held its Republican primary for County Sheriff.  Dennis Rice, the incumbent, was running for re-election against challenger Luther Blanton.  Hubble backed Blanton's bid to unseat Rice as sheriff, demonstrating his staunch support for the challenger by placing campaign signs about his front lawn and in his car windows.  Hubble's conspiracy theory has its origins in this public pronouncement.

Hubble believes that Sheriff Rice or his deputies spotted his car on the street that election day, taking note of, and exception to, the endorsement for the opposition.  Rice attests that, prior to the traffic stop that night, neither he nor his deputies had any knowledge of the type of vehicle Hubble drove.  Nonetheless, Hubble theorizes that Rice must have observed his green Lincoln Towncar during an investigatory visit to a local watering hole called the Waveland Pub, where friends and supporters of Blanton had gathered to cheer on their choice for County Sheriff.

Under Indiana law, it is illegal to serve alcohol on election day when the polls are open.  Although the parties dispute whether the gathering was held in the establishment itself or on the property adjacent to it, it is undisputed that Rice paid the pub a visit to have a look.

Hubble did not attend the festivities, but his son Roger did, using the elder's Lincoln Towncar as transport.  The car may have been parked on the street at the time of Rice's visit.  According to Rice, he did not make record of any vehicles in the area, but simply contacted the Indiana State Excise Police to report his suspicion that alcohol was being served on the premises.

When the polls closed that evening, bartender Sally Ottenburg opened the pub to the public.  Shortly thereafter, she received a call from Rice.  The Sheriff had recently learned that the voters of Montgomery County had given him another term in office.   As Rice tells it, the purpose of his call was to notify the pub's owner that he would no longer tolerate the all-too-frequent shenanigans which had been occurring at the establishment.  According to Ottenburg, however, Rice informed her that he had "beat Blanton in a landslide," and that he would "have six squad cars down at the pub," and intended to arrest any intoxicated patrons.

Later that night, Ottenburg gave a number of her patrons a ride home.  At that time, Ottenburg says, she was stopped by a Montgomery County police officer.  The officer told her that he had pulled her over because he had seen her truck parked in front of the Waveland pub for several hours that day.

Montgomery County Deputy Sheriff Jacob Watson testified that, while returning to the Sheriff's office that night via State Route 47, he noticed an oncoming vehicle traveling at a high rate of speed.  Watson's radar indicated that the vehicle was traveling 71 mph in a 55 mph zone.  Although he could not determine the car's make or model, Watson radioed Indiana State Trooper Matthew Voohrees to alert Voohrees to the speeding vehicle.  Voohrees was on patrol in the area at the time and was also traveling along State Route 47.  He did not remember receiving a radio dispatch alert from another officer, but does remember observing a passing vehicle traveling at a high rate of speed.  Voohrees' radar returned the same results as had Watson's, showing that the car was traveling 16 mph above the posted speed limit.  Voohrees turned his police car around, flashed its emergency lights, and pulled over the driver, later identified as Hubble.

When he approached Hubble's vehicle, Voohrees noticed a strong smell of alcohol.  He administered four field sobriety tests to Hubble, all of which Hubble failed.  Hubble also provided breath samples on the scene, which indicated that he was in excess of the legal limit.  Voohrees brought Hubble to the Montgomery County Jail for a chemical blood-alcohol test, which Hubble refused to take.  Hubble later pleaded guilty to operating a vehicle with a blood alcohol content of at least .08%.

Hubble disputes Voohrees' account of events.  According to Hubble, minutes after he was stopped by Voohrees, Deputy Watson arrived on the scene in his Sheriff's car.  Watson walked up to Hubble's vehicle and stated, "[t]hat's the green Lincoln with the Blanton signs."  Voohrees then administered the breath sample test, but would not let Hubble see the screen displaying the results.  Back at the station, Voohrees intimidated Hubble into not taking the test by telling him, "[i]f you take the test, you're gonna test a lot more than you did in the car, and you was way over in the car."

Hubble brought suit alleging multiple civil rights violations.  Both sides moved for summary judgment.  On August 29, 2006, the district court granted Voohrees' motion for summary judgment, finding that Hubble's federally secured rights were not violated in connection with the events detailed above.  This timely appeal followed.

**DISCUSSION**

On appeal, Hubble contends that there were genuine issues of material fact concerning whether his vehicle was pulled over for reasons that were legitimate or merely pretextual. First, Hubble contends, the parties dispute whether Hubble was actually speeding at the time he passed Voohrees' vehicle. In his pleadings, Hubble claimed that he was traveling within the speed limit on the night in question and argued that the traffic stop was unsupported by reasonable suspicion or probable cause and constituted an illegal search and seizure. He contends that the district court ignored his version of events and that summary judgment was improper.

Hubble claims that he was not speeding at any time when he was within the radar zone of Voohrees. He knows this to be true, he asserts, because his car was armed with a radar detector device that alerted him to the presence of Voohrees' vehicle, prompting him to reduce his speed to the posted limit of 55 mph. Because this testimony directly contradicts that of Officer Voohrees, he argues, issues of material fact remain in dispute. However, it was undisputed that Hubble was traveling in excess of the speed limit when he passed Voohrees' police vehicle, based on Hubble's own admission. In his deposition, Hubble stated that he was "probably" traveling faster than the speed limit while driving on State Route 47 and that "normally you can run the speed limit and a little bit over and nobody's going to bother you." Hubble further stated that he dislikes using cruise control on his car and was not using the speed-regulating feature that night. Although Hubble does not believe that he could have been traveling faster than approximately 61 mph, Voohrees and Watson each testified that their radar indicated that he was traveling 71 mph.

In any event, the discrepancy is academic. Because Hubble was violating Indiana law by speeding, Trooper Voohrees' decision to stop him was reasonable under the circumstances and supported by probable cause.

We are unpersuaded by Hubble's argument that the district court improperly focused its analysis on whether Voohrees had probable cause to arrest Hubble for driving while intoxicated rather than on whether there was probable cause to stop him for a traffic violation. Hubble's claim is undermined by the district court's language in its entry of summary judgment, in which it stated, "Voohrees' observation of the green Towncar during the late evening of May 7, 2002, indicated that the Towncar was exceeding the posted speed limit. This violated a traffic law, Ind. Code § 9-21-5-2, which in turn justified the initial stop of the vehicle." Although the district court went on to detail Voohrees' observations that warranted the arrest, including Hubble's driving outside the highway lines, the smell of alcohol on his breath, and the results of the on-site breathalyser, it was readily apparent to the court, as it is to us, that Voohrees first had probable cause to stop Hubble's vehicle because he observed Hubble speeding. Whether Voohrees or his colleagues had subjective motivations for making the traffic stop is irrelevant. *Whren v. United States*, 517 U.S. 806, 813

(1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

Hubble also argues that his right to equal protection was violated when Sheriff Rice conspired with Deputy Watson and other law enforcement officers for the purposes of punishing those who supported Rice's political rival. Hubble acknowledges that this court has consistently held that section 1985(3) does not cover alleged victims of nonracial political conspiracies, but invites us to now reconsider this precedent and reinterpret the statute. We decline his invitation to do so.

We agree with the district court that Hubble failed to present triable questions of fact concerning whether his federally secured rights were violated in connection with the events of May 7, 2002, and decline to extend the reach of § 1985. Accordingly, we AFFIRM the district court's granting of summary judgment.