NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                  )
                                   )
      Appellant,             )
                                   )
v.                                 )        Case No.  2D17-4814
                                   )
ALLEN ROBERT BOSTON,               )
                                   )
      Appellee.              )
                                   )
_____    )

Opinion filed January 18, 2019.

Appeal from the Circuit Court for Pinellas
County; Chris Helinger, Judge.

Ashley Brooke Moody, Attorney General,
Tallahassee, and Wendy Buffington,
Assistant Attorney General, Tampa, for
Appellant.

Larry Sandefer, Clearwater, for Appellee.


LaROSE, Chief Judge.

        The State appeals the trial court's suppression order related to the traffic

stop of Allen Robert Boston.  We have jurisdiction.  See Fla. R. App. P. 9.140(c)(1)(B).

The State argues that Mr. Boston was driving his vehicle on the wrong side of the road,

thus giving the arresting deputy a legally valid basis to stop Mr. Boston.  We agree and

reverse the trial court's order.

## Background

On an early spring morning in Indian Rocks Beach, Deputy Matthew Schultheis saw Mr. Boston drive northbound through an intersection's green light and continue into the southbound side of the road. Deputy Schultheis testified that Mr. Boston drove his vehicle on the wrong side of the road for about one-hundred feet before returning to the proper lane. There were no other vehicles on the road, nor were any pedestrians present. Deputy Schultheis stopped Mr. Boston and noticed signs of impairment, including slurred speech, an unsteady gait, and the odor of alcohol. The State charged Mr. Boston with felony driving under the influence. See § 316.193(2)(b)(1), Fla. Stat. (2016).

Contending that he did not commit a traffic violation, Mr. Boston moved to suppress "any and all statements, observations, or physical evidence . . . [obtained] subsequent to the stop." The trial court granted the motion. The trial court focused on the reasonableness of Mr. Boston's conduct. The trial court noted the quickness with which he corrected his course, and commented on the intersection's confusing configuration.

Here, the State argues that Mr. Boston's violation of section 316.081, which prohibits the operation of a motor vehicle on the wrong side of the road, justified the stop. The State contends that Deputy Schultheis had an objective basis for the stop, irrespective of how quickly Mr. Boston corrected his course, or how confusing the intersection was.

## Analysis

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Rolling v. State, 695 So. 2d 278, 291 (Fla. 1997). Our review involves a mixed question of law and fact. We "accord a presumption of correctness to the trial court's determination of the historical facts, but must independently review mixed questions of law and fact that ultimately determine the constitutional issues arising in the context of the Fourth Amendment." Moody v. State, 842 So. 2d 754, 758 (Fla. 2003); E.B. v. State, 866 So. 2d 200, 202 (Fla. 2d DCA 2004) ("When reviewing a trial court's ruling on a motion to suppress, an appellate court reviews a mixed question of law and fact. The standard for reviewing facts is whether competent, substantial evidence supports the trial court's factual findings. The historical facts should be reviewed only for clear error. The trial court's application of law is reviewed de novo.").

"An examination of the validity of a traffic stop under the Fourth Amendment . . . requires courts to determine whether the stop was reasonable." Dobrin v. Fla. Dep't of Highway Safety & Motor Vehicles, 874 So. 2d 1171, 1173 (Fla. 2004). Thus, we must assess "whether the particular officer who initiated the traffic stop had an objectively reasonable basis for making the stop." Id. at 1174. In "applying the objective test, generally the only determination to be made is whether probable cause existed for the stop in question." Holland v. State, 696 So. 2d 757, 759 (Fla. 1997).

- 3 -

"The constitutional validity of a traffic stop depends on purely objective criteria. The objective test 'asks only whether any probable cause for the stop existed,' making the subjective knowledge, motivation, or intention of the individual officer involved wholly irrelevant." Hurd v. State, 958 So. 2d 600, 602 (Fla. 4th DCA 2007) (first citing Whren v. United States, 517 U.S. 806, 813 (1996); then quoting Holland, 696 So. 2d at 759).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810. "The test is whether a police officer could have stopped the vehicle for a traffic violation." Hurd, 958 So. 2d at 602. On at least one occasion, we have reversed a suppression order based on a driver's failure to stop at a stop sign, regardless of the officer's subjective suspicions. See State v. Chaney, 744 So. 2d 595, 595 (Fla. 2d DCA 1999) ("The [trial] court granted the motion based on the police officer's testimony that he stopped the truck not because the driver had failed to stop at a stop sign, but because he thought some drug activity had occurred. This was error. The officer had an objective basis to stop Chaney.").

Mr. Boston violated section 316.081(1), which requires that "[u]pon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway." For approximately one hundred feet,[1] Mr. Boston drove his automobile in the oncoming lane of traffic, "a noncriminal traffic infraction, punishable as a moving

---

[1]On cross-examination, Deputy Schultheis conceded that "I'm bad with distance," and admitted that he had testified at an earlier Department of Highway Safety and Motor Vehicles administrative hearing that Mr. Boston was "in the wrong lane for approximately 90 feet," which he estimated to be three car lengths. Defense counsel argued that three car lengths amounted to a distance of approximately thirty feet.

violation as provided in chapter 318." § 316.081(5). As a result, Deputy Schultheis had probable cause to stop him. See State v. Wimberly, 988 So. 2d 116, 119 (Fla. 5th DCA 2008) ("Generally, a traffic stop is reasonable under the Fourth Amendment 'where the police have probable cause to believe that a traffic violation has occurred.' " (quoting Whren, 517 U.S. at 810)); see also State v. Proctor, 161 So. 3d 409, 410-12 (Fla. 5th DCA 2014) (concluding that law enforcement possessed probable cause to stop Proctor for "driving at 3:30 a.m. on a deserted street without headlights for a brief period of time").

Nonetheless, the trial court looked to the reasonableness of Mr. Boston's driving. The trial court opined on the confusing nature of the intersection and noted that no one else was on the road. The trial court also found it "problematic that [Deputy Schultheis] really didn't know why he was stopping [Mr. Boston], didn't know whether it was failure to stay in the same lane, didn't know whether it was driving the wrong way."[2]

The objective test recounted above counsels against this subjective analysis. State v. Rodriguez, 904 So. 2d 594 (Fla. 5th DCA 2005), is instructive. There, a law enforcement officer observed Rodriguez pull out from an area without stopping at a stop sign. Id. at 595. The speed limit was 25 miles per hour. Id. Although the officer could not clock the driver's speed, he testified the car "blew through this stop sign." Id.

_____

[2]Deputy Schultheis testified on direct examination that he conducted a traffic stop because Mr. Boston's vehicle was "traveling in the wrong lanes." On cross-examination, Deputy Schultheis was questioned about a police report prepared by a fellow officer, that stated that Deputy Schultheis relayed that he had stopped Mr. Boston because he failed to maintain a single lane. See § 316.089(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane . . . ."). Deputy Schultheis disavowed the statement, testifying instead that Mr. Boston "was stopped for traveling in the wrong lanes." On redirect examination, Deputy Schultheis reaffirmed that he could have issued a citation to Mr. Boston for "driving in the wrong lane."

The vehicle turned and then drove east in the westbound lane of Pine Street, a street marked with a double yellow line separating the lanes, for thirty to fifty feet. Id. Rodriguez pulled into an apartment complex where the officer stopped him. Id. The officer thought the driver might have been impaired based on his erratic driving. Id. "The deputy testified that he stopped the driver for driving on the wrong side of the road and running a stop sign." Id. Rodriguez was arrested for DUI and a subsequent search revealed cocaine. Id.

The trial court suppressed the cocaine reasoning that "Rodriguez had not violated any traffic laws and, apart from civil traffic infractions, the circumstances did not establish articulable grounds to believe Rodriguez was impaired." Id. at 596. The Fifth District observed that "the [trial] court apparently accepted defense counsel's argument Rodriguez did not enter the roadway without stopping and it is permissible to drive in the wrong lane as long as one does not interfere with other vehicles." Id. at 598. The court also observed that the trial court "also ruled that the stop was not justified based on Rodriguez' unusual driving style." Id.

The Fifth District concluded that counsel's "deconstruction of Rodriguez' driving pattern may have been appropriate before a judge hearing civil traffic infractions; however, that is not the issue in a motion to suppress. The proper inquiry in this case was whether [law enforcement] had probable cause to stop Rodriguez based on his driving pattern." Id. The district court concluded that the officer would have been "derelict in his duties if he did not stop Rodriguez because there was probable cause based upon objective evidence to believe Rodriguez violated several Florida traffic statutes. The trial court erred in ruling otherwise." Id.

Similarly, the trial court, here, erred in finding that Deputy Schultheis lacked a valid basis to stop Mr. Boston.  All that was relevant in this criminal case was whether Deputy Schultheis had probable cause to believe Mr. Boston violated a traffic statute.  Uncontroverted evidence established that Mr. Boston drove his vehicle in the wrong lane.  He thus violated section 316.081 and provided Deputy Schultheis with an objectively valid reason to stop him.  Cf. Fla. Dep't of Highway Safety & Motor Vehicles v. Jones, 935 So. 2d 532, 534-35 (Fla. 3d DCA 2006) ("Here, Officer Burgos observed Jones driving into the lane designated for oncoming traffic for no apparent reason.  This was a violation of section 316.081 of the Florida Statutes which requires only that 'a vehicle shall be driven upon the right half of the roadway' . . . .  The arrest report clearly detailed this behavior and provided probable cause for the stop.").

## Conclusion

Based upon his observations of Mr. Boston's driving, Deputy Schultheis had probable cause to believe that Mr. Boston committed a traffic infraction.  Consequently, the deputy had an objectively reasonable basis for the traffic stop.  We reverse the trial court's suppression order and remand for further proceedings consistent with this opinion.

Reversed and remanded.


VILLANTI and LUCAS, JJ., Concur.