MLR/SC #268-19                                     7/30/19

STATE OF MAINE                                    UNIFIED CRIMINAL COURT
KENNEBEC, ss                                      LOCATION: AUGUSTA
                                                  DOCKET NO. CDCR-19-551

State of Maine,          *Maeghan Maloney*

    *Plaintiff,*                )
                                                  )
    v.                      )          **Order on Motion to Suppress**

Robert Pelletier,        *Darrick Banda*

    *Defendant.*             )

This matter came before the court on July 18, 2019 on Defendant's motion to suppress all evidence obtained as a result of the stop of his vehicle, which he contends was done without reasonable suspicion based on articulable facts. Although the written motion was broadly phrased, Defendant stipulated that his motion was limited to whether there was a basis for the initial stop. After hearing and upon consideration of the evidence, the court orders as follows.

On March 6, 2019, Officer Hutchings of the Augusta Police Department responded to a call in the area of 41 Patterson Street. Officer Hutchings is an experienced and well-trained police officer. He was informed that a resident of 41 Patterson Street had called dispatch to complain that a silver or gray sedan was driving up and down Patterson Street past the caller's house. In addition, the same person had called the night before for the same reason: a silver or gray vehicle driving up and down past the caller's house. Officer Hutchings was also aware that he had served a protection from abuse order at that same residence approximately a month before. He drove to the area to check the area in response to that call; he arrived approximately 10 – 15 minutes after the call.

As Officer Hutchings was eastbound on Patterson Street, he saw a vehicle pull out of what he thought was 41 Patterson Street; he later determined that in fact it was 39 Patterson

1

Street. The vehicle briefly approached Officer Hutchings in the middle of the road, and then turned into 34 Patterson Street, on the opposite side of the road. Although the vehicle traveled for a short distance in the center of the road, that was not illegal or even unreasonable on a small residential street with high snowbanks and no line markings. Officer Hutchings was able to determine that the vehicle was a silver sedan, and as a result he pulled in behind it and approached the driver.[1]

Officer Hutchings did not stop the vehicle because of its operation, but rather to investigate potential criminal activity. There were no reports of any actual crimes or criminal activity in the neighborhood, just the calls from 41 Patterson Street that a silver or gray sedan was driving up and down the street.

For an investigatory stop to be valid, the "officer must act on the basis of 'specific and articulable facts which, taken with rational inferences from those facts, reasonably warrant the intrusion.'" *State v. Dulac*, 600 A.2d 1121, 1122 (Me. 1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). In this case, the court finds that there are articulable facts leading to a suspicion of criminal activity sufficient to warrant the stop. While the Defendant did not commit any traffic infraction or other criminal activity observed by the officer, the officer had a report of suspicious activity by a car matching the description of Defendant's car, not just for one night but for two consecutive nights. The act of driving up and down a street for two nights running is not illegal and can be consistent with many explanations. Nonetheless, it raises a suspicion that criminal activity may be afoot, whether stalking, "casing" for a burglary, or the like. Indeed, that suspicion was shared by the caller, and the officer did

---

[1] Officer Hutchings did not pull over or stop the vehicle, but when he parked behind it his blue lights were on and he was blocking the ability of the vehicle to leave. No one has disputed that this was a "stop" for purposes of this motion. *See, e.g., State v. Chapman*, 495 A.2d 314, 316 (Me. 1985).

2

just what citizens want the officer to do: find out what it is going on and prevent the commission of any crime. *See State v. Worster*, 611 A.2d 979 (Me. 1992) (driving slowly through known deer habitat, looking from side to side, and braking unpredictably is reasonable basis upon which to make investigatory stop.)

Defendant's reliance on *State v. Chapman*, 495 A.2d 314 (Me. 1985) is misplaced. There, a vehicle was seen driving quickly through a parking lot in the early morning hours when businesses were closed. The motion justice denied the motion to suppress, finding sufficient articulable facts to justify the stop. The Law Court vacated the judgment, but not because there were not such sufficient facts. Rather, the Law Court held that because the officer did not himself articulate those facts as the basis for the stop, the stop was invalid.

> The motion Justice was not clearly erroneous in finding that the facts as stated, could "raise the question in a reasonable man's mind or a reasonable officer's mind that there may have been a break, under all the circumstances, into those stores." The crucial issue, then, is whether *Officer Moor himself* had such a suspicion when he first stopped the Defendant. Without such a finding, the ruling that the stop was objectively reasonable is irrelevant.

*Chapman*, 495 A.2d at 317 (emphasis in original). This holding – that the court must find that the officer actually had a such a suspicion at the time of the investigatory stop or the stop is invalid even if the objective facts could have justified it – is not applicable here. Officer Hutchings stopped the vehicle precisely because of the facts articulated above.[2] The infirmities

---

[2] In addition, the ruling that the officer must subjectively base the stop on the articulated facts has been discredited. In *Whren v. United States*, 517 U.S. 806 (1996), the United States Supreme Court concluded that a police officer can validly conduct a traffic stop based upon the observation that a traffic infraction has occurred, regardless of whether the officer was using the traffic infraction as a "pretext" to investigate the driver for other criminal activity. According to the Court, *Whren* "foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id.* at 813. In 1998, the Law Court applied *Whren* in *State v. Bolduc*, 1998 ME 255, ¶ 6, 722 A.2d 44, 45, thus effectively overruling *Chapman*.

3

identified in *State v. Garland*, 482 A.2d 139 (Me. 1984), also cited by Defendant, are similar to *Chapman* and again provide little support for Defendant's argument.

For the foregoing reasons, the motion to suppress is denied and the case shall be placed on for docket call. This Order on Motion to Suppress may be incorporated on the docket of the case by reference.

Dated: July 30, 2019

Valerie Stanfill
Judge, Unified Criminal Court

4