

## NUMBER 13-08-00293-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

DOMINGO CHAVEZ SEGOVIANO,                                        Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Benavides, and Vela
### Memorandum Opinion by Justice Yañez

Appellant, Domingo Chavez Segoviano, pleaded "guilty" to one count of possession of marihuana in an amount greater than 2,000 pounds.[1]  Pursuant to a plea agreement, the trial court sentenced appellant to five years' confinement in the Texas Department of Criminal Justice, Institutional Division.  By one issue, appellant challenges the trial court's denial of his motion to suppress.  We affirm.

### I. BACKGROUND

After a traffic stop, marihuana was found in a vehicle driven by appellant.  Appellant

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (a), (b)(6) (Vernon Supp. 2009).

was charged with possession of marihuana in an amount of more than two hundred pounds. Appellant filed a motion to suppress all evidence seized from his vehicle. At a hearing on appellant's motion to suppress, DPS Trooper Ricardo Huerta testified on behalf of the State. No other testimony was offered at the suppression hearing.

At the hearing, Trooper Huerta stated that he received a call from Sergeant Daniel Martinez, a DPS narcotics officer, asking him to establish probable cause to stop appellant's vehicle. According to Trooper Huerta, Sergeant Martinez also instructed him to gain appellant's consent to search the vehicle. Trooper Huerta described appellant's vehicle as "a black truck tractor semi-trailer with white box." When Trooper Huerta saw appellant's truck, he began pursuing it. Trooper Huerta testified that he observed appellant driving his truck "too close" to the vehicle in front of it. Trooper Huerta initiated a traffic stop for driving at an unsafe distance. The trial court admitted a video taped recording of the encounter, which was played and entered into the record.[2]

The video shows that Trooper Huerta informed appellant that he had been stopped for driving at an unsafe distance and asked appellant to produce his commercial driver's license, registration, proof of insurance, and bill of lading. Appellant complied. The tape shows that Trooper Huerta then asked appellant if he had any marihuana in the truck or the trailer. Appellant replied, "No." Trooper Huerta asked, "Nothing in the trailer hidden inside or anything like that?," and appellant responded, "You can walk in if you want to. Okay." Trooper Huerta testified that he "took that as a consent."

The video shows Trooper Huerta returning appellant's driver's license and giving appellant a written warning for the traffic violation. The State asked Trooper Huerta, "Now, you enter your vehicle here at [3:06 p.m.]. What are you doing in your vehicle at this point?", and Trooper Huerta replied, "I'm probably calling his history check or mak[ing] sure he's not wanted or something." The State then asked, "What were you doing at that point

---

[2] At the suppression hearing, the trial court admitted into evidence a videotape recording of Trooper Huerta's encounter with appellant. That recording was transcribed into the record by the court reporter.

in time when you entered the vehicle?", and Trooper Huerta responded, "Okay. If I was going to do it, I was probably going to call communications and check for his—his driver's license check actually, see if he had any warrants or—" According to Trooper Huerta, he prepared the consent to search form "[r]ght after that." The videotape was fast forwarded to 3:09 showing appellant signing and Trooper Huerta witnessing the consent to search form. Trooper Huerta then conducted a search of appellant's vehicle, and Sergeant Rick Rivera arrived and joined the search of the vehicle. Trooper Huerta testified that he did not find any contraband while conducting the search, but when the K-9 unit arrived the dog alerted to the odor of narcotics. The videotape ended at 3:21 before the K-9 units arrived. According to Trooper Huerta, he left the area of the traffic stop at 3:31.

On cross-examination, Trooper Huerta testified that he stopped appellant at 2:56, but in fact, the video showed that he "gave the signal" at 2:51 and that by 2:52, appellant had stopped on the side of the road. Trooper Huerta agreed that it was approximately fourteen minutes from the time he stopped appellant until he issued the warning citation and that once he handed appellant the citation, the traffic stop was over. Trooper Huerta agreed that the tape ran thirty minutes, and that during that time the K-9 units had not arrived.

Trooper Huerta thought it was suspicious that appellant "reiterated [Trooper Huerta's] questions." However, defense counsel informed Trooper Huerta that appellant only repeated one question that he asked. Defense counsel asked, "Okay. So of all the questions you asked over a fifteen-minute period, he answered your questions very clearly, didn't he?," and Trooper Huerta replied, "Yes." Trooper Huerta agreed that all of the documents he reviewed on the day he stopped appellant "appeared to be in perfect order."

Defense counsel asked if after the traffic stop was completed, during a three minute lag, Trooper Huerta had called Sergeant Martinez. Trooper Huerta stated, "Yes, I did" and agreed that he had recounted the events of the traffic stop to Sergeant Martinez and informed him that he had obtained consent to search the vehicle. Trooper Huerta then

3

asked appellant to sign the form, entered appellant's vehicle, and the other officers arrived. Trooper Huerta did not observe anything "out of the ordinary" when he searched appellant's vehicle.

According to Trooper Huerta, the K-9 units arrived sometime after the tape ended. The dog alerted, and Sergeant Rivera asked appellant if they could escort him to the "port of entry," which was approximately twenty miles away. Trooper Huerta asserted that they left the area at 3:31 p.m. and arrived at the port of entry approximately one hour later. Fork lift operators then removed cargo from the vehicle and marihuana was discovered in the cargo at 5:00 p.m.

The trial court denied appellant's motion to suppress. Pursuant to a plea agreement with the State, appellant pleaded guilty to possession of marihuana in an amount of more than 2,000 pounds.[3] The trial court sentenced appellant to five years' incarceration. This appeal ensued.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Whether the trial court properly denied a defendant's motion to suppress is reviewed under a bifurcated standard of review.[4] We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor.[5] When, as in this case, the trial court makes no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court's ruling.[6] We must uphold the trial court's ruling if it is correct under any theory of law applicable to the case.[7] "Absent a clear abuse of discretion, the

---

[3] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (a), (b)(6).

[4] *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

[5] *Scardino v. State*, 294 S.W.3d 401, 405 (Tex. App.–Corpus Christi 2009, no pet.); *see Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

[6] *St. George*, 237 S.W.3d at 725.

[7] *Id.*

4

ruling on the admissibility of evidence will not be disturbed."[8]

An individual is guaranteed the right to be secure from unreasonable searches and seizures.[9] The stopping of a vehicle and the detention of its occupants constitute a seizure within the meaning of the Fourth Amendment.[10] To determine whether an investigative detention was reasonable, we apply the following two-part test as articulated in *Terry v. Ohio*: (1) was the officer's action justified at its inception; and (2) were the officer's actions reasonably related in scope to the circumstances that justified the initial interference.[11]

Under the first prong of *Terry*, the detention must be based on a reasonable suspicion to warrant the intrusion.[12] "The second prong of *Terry* deals with the scope of the detention," and "Texas Courts recognize that investigative detentions become unreasonable when they are not reasonably related in scope to the circumstances which justified the interference in the first place."[13]

A warrantless search is presumptively unreasonable under the Fourth Amendment, unless a recognized exception to the warrant requirement exists.[14] One well-established exception to the warrant requirement is voluntary consent.[15]

### III. ANALYSIS

By his sole issue, appellant contends that the trial court abused its discretion by denying his motion to suppress. Specifically, appellant asserts that Trooper Huerta

---

[8] *Fonseca v. State*, 881 S.W.2d 144, 149 (Tex. App.–Corpus Christi 1994, no pet.) (citing *Rivera v. State*, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991)).

[9] U.S. CONST. amend IV; TEX CONST. art. I § 9.

[10] *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

[11] *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

[12] *Id.* at 21.

[13] *Davis v. State*, 947 S.W.2d 240, 243, 244 (Tex. Crim. App. 1997) (en banc).

[14] *United States v. Karo*, 468 U.S. 705, 717 (1984); *Fonseca*, 881 S.W.2d at 149.

[15] *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007); *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

acquired his consent to search his vehicle after unlawfully detaining "him beyond the time that his traffic stop had been completed."

## A. Was the initial stop justified?

Appellant argues that Trooper Huerta "lacked sufficient articulable facts upon which to stop [him] and to conduct a narcotics investigation." It appears that appellant challenges the initial stop.

An officer may lawfully stop and detain a person for a traffic violation regardless of the officer's subjective reasons for the detention.[16]

Texas Transportation Code section 545.062(a) provides that

[a]n operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.[17]

Trooper Huerta testified that although he followed appellant's vehicle with the subjective intent of stopping appellant pursuant to Sergeant Martinez's instructions, Trooper Huerta initiated the traffic stop after observing appellant commit a traffic violation.[18] Trooper Huerta stated that he saw appellant's vehicle follow another vehicle "too closely." Trooper Huerta testified that appellant's vehicle was only one car-length behind the car in front of him, and that was an unsafe distance. Trooper Huerta agreed with the State when it asked, "Now, based on your experience, if that tractor trailer were to—were to have to come to a sudden stop, would it be posing a risk to the vehicle in front of it from the distance it was following it?"

Thus, the trial court could have reasonably found that Trooper Huerta observed

---

[16] *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (en banc).

[17] T EX. T RANS. C ODE A NN. § 545.062(a) (Vernon 1999).

[18] We note that, on appeal, appellant does not dispute that he committed a traffic offense.

appellant commit a traffic violation.[19]   Therefore, we conclude that Trooper Huerta had reasonable suspicion to justify the stop.[20]

## B.  Did Trooper Huerta exceed the scope of the detention?

Next, Appellant argues that because the sole basis for the stop was Trooper Huerta's observation that appellant committed a traffic violation, the scope of his investigation was limited to that purpose, and his "continued detention . . . was premised solely upon the Trooper's intention to conduct a narcotics investigation, was not founded upon reasonable, articulable facts sufficient to justify his continued detention, [and] was not based upon consent."  It appears that appellant complains that the traffic stop ended when Trooper Huerta gave him the warning and that therefore, the subsequent detention was unlawful.

Viewing the evidence in the light most favorable to the trial court's ruling, the evidence showed the following:  (1)Trooper Huerta stopped appellant for a traffic violation; (2) during the course of the traffic stop, appellant told Trooper Huerta he was free to walk into the trailer; (3) Trooper Huerta believed that appellant had consented to a search of his vehicle at this point; (4) after Trooper Huerta gave appellant a warning, he went back to his vehicle to determine whether appellant had any warrants and to fill out the consent to search form;[21] (5) appellant signed the consent to search form; (6) Trooper Huerta testified that appellant never "revoked" his consent to search; (7) drug-sniffing dogs alerted for

---

[19] *See Garcia*, 827 S.W.2d at 944; *see also Gagliano v. State*, No. 13-02-00677-CR, 2004 Tex. App. LEXIS 7830, at *8 (Tex. App.–Corpus Christi Aug. 27, 2004, no pet.) (mem. op., not designated for publication) (concluding that officer had reasonable suspicion to justify a stop after the officer testified he observed appellant follow another vehicle "too closely," appellant's vehicle was approximately one car length behind another vehicle, and appellant would not have been able to avoid an accident with the other vehicle if it had stopped unexpectedly).

[20] *See Gagliano*, 2004 Tex. App. LEXIS 7830, at *8.

[21] Appellant claimed that Trooper Huerta testified at the suppression hearing that he called Sergeant Martinez to ask for further instructions.  However, the record shows that Trooper Huerta never stated that he asked Sergeant Martinez for further instruction and continuously testified that when he made the call to Martinez he informed Martinez that he had appellant's consent. During cross-examination, appellant's counsel asked, "And you asked [Sergeant Martinez] for further instructions," and Trooper Huerta replied, "Just told him I had got the consent to search."

narcotics;[22] and (8) marihuana was discovered hidden in appellant's vehicle. Based on the evidence presented, the trial court could have reasonably concluded that appellant orally consented to a search of his vehicle during the investigation of the traffic violation.[23] Thus, appellant's continued detention was based on the oral consent given to Trooper Huerta to search the vehicle.[24] Appellant does not cite to any authority and we find none providing that oral consent given during a traffic stop expires when the purpose of the initial stop has been completed.[25] Moreover, although Trooper Huerta testified that he asked appellant to sign the consent to search form after he gave appellant the warning, "once the purpose of the stop has been effectuated and the officer's suspicions allayed, he may still ask the driver if he possesses any illegal contraband and then solicit his voluntary consent to search the vehicle."[26] Therefore, the trial court properly concluded that because appellant orally consented to the search, Trooper Huerta did not exceed the scope of the detention. We conclude that the trial court did not abuse its discretion by denying appellant's motion to suppress. We overrule appellant's sole issue.

---

[22] *Harrison v. State*, 7 S.W.3d 309, 311 (Tex. App–Houston [1st Dist.] 1999, pet. ref'd) ("[W]hen a trained and certified narcotics dog alerts an officer to apparent evidence or contraband, probable cause exists to search a vehicle.") (citing *Josey v. State*, 981 S.W.2d 831, 846 (Tex. App.–Houston [14th Dist.] 1998, pet. ref'd)).

[23] *See Montoya v. State*, 744 S.W.2d 15, 25 (Tex. Crim. App. 1987) ("A consent to search may be oral and still be valid."), *overruled on other grounds by Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

[24] We note that in his brief appellant does not argue that his oral consent was invalid or involuntary, and he does not cite to authority supporting such a conclusion. *See Gagliano*, 2004 Tex. App. LEXIS 7830, at *9 (stating that the focus is on the voluntariness of the consent to search). Furthermore, Trooper Huerta had not ask for consent to search the vehicle when appellant spontaneously offered his oral consent.

[25] *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc) (stating that a trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts in an arbitrary or capricious manner).

[26] *Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.–Waco 2003, pet. ref'd) (citing *Spight v. State*, 76 S.W.3d 761, 767-68 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (refusing to hold that it is unreasonable per se for an officer to request a consent to search after the completion of a traffic stop and concluding that the appellate court's focus must be on the voluntariness of the consent)); *see also Gagliano*, 2004 Tex. App. LEXIS 7830, at *9 (concluding that officer legally detained the appellant even though the officer asked for the appellant's consent to search her vehicle after giving her a warning because the appellant voluntarily consented to the search).

## IV. CONCLUSION

We affirm.

_____
LINDA REYNA YAÑEZ,
Justice

Do not publish.
SEE TEX. R. APP. P. 47.2(b).

Delivered and filed this
the 10th day of June, 2010.

9